SCHIRMER *v.* BALDWIN.

Opinion delivered November 3, 1930.

582

*Otis Gilleylen, Feazel & Steel, Abe Collins* and *King, Mahaffey, Wheeler & Bryson,* for appellants.

*Shaver, Shaver & Williams* and *James D. Head,* for appellee.

Smith, J. This appeal involves the validity of the alleged last will and testament of Mrs. Lillian M. Gathright. The probate of the will was opposed in the probate court upon the grounds that the execution of the will had been procured by undue influence, and that the testatrix lacked mental capacity to make it. There was a finding in favor of the will, and the same issues were tried in the circuit court, with the same result, and this appeal is from that judgment.

A number of witnesses gave testimony bearing upon these questions, and, while it is contended that the verdict of the jury was contrary to the preponderance of the evidence, it is conceded that the testimony is legally sufficient to support the finding that the execution of the will was not procured through the exercise of undue influence, and that the testatrix had the mental capacity to make the will. It will not, therefore, be necessary to discuss these questions of fact, or to make any recital of them, further than is necessary to present the assignments of error raised on this appeal.

We are asked to reverse the judgment of the circuit court admitting the will to probate for the reasons that

error was committed in the admission of the testimony of Dr. George B. Fletcher, and that of Mrs. Helen Knight, and in giving instructions numbered 5 and 12. These assignments of error will be considered in the order stated.

The contestants introduced, over the objection and exception of contestee, the certificate of death issued by the registrar of Vital Statistics of the State, which was based upon the report of Dr. George B. Fletcher, who had attended Mrs. Gathright in her last illness. This certificate recited the cause of death to have been chronic alcoholism, with myocardial failure as a secondary or contributing cause.

Dr. Fletcher was called as a witness at the trial from which this appeal comes by contestee, who was named as executrix of the will and who had qualified as such after its probate had been ordered by the probate court. Dr. Fletcher was asked what the mental condition of Mrs. Gathright was on the day of the execution of the will, and the objection was made that this testimony was privileged and incompetent under § 4149, C. & M. Digest, which reads as follows:

''No person authorized to practice physic or surgery and no trained nurse shall be compelled to disclose any information which he may have acquired from his patient while attending him in a professional character, and which information was necessary to enable him to prescribe as a physician or do any act for him as a surgeon or trained nurse.''

Many cases are cited in the briefs of opposing counsel on the nature of this privilege, and upon the question of the right to waive it, whether by the heir or the personal representative; but we find it unnecessary to decide this question.

Mrs. Gathright was a childless widow at the time of her death, and her father and mother were both dead. She was survived by two brothers and two sisters, none of whom were mentioned in the will, and the sole devisee was contestee, a niece, who was not an heir, for the reason

that her mother, one of Mrs. Gathright's sisters, is living, and the contest is on behalf of the other sister and the two brothers, who, together, would, in the absence of a will, take a three-fourths interest in the estate.

In Jones on Evidence (2d ed.) § 2198, page 4194, it is said: "By the weight of authority, it is held that, since the patient may waive the privilege for the purpose of protecting his rights, the same waiver may be made by those who represent him after his death, for the purpose of protecting rights acquired by him. It has been held, in some states, that this privilege cannot be waived by the heirs; that the right of waiver belongs to the personal representative alone."

We have here a contest between all the heirs, except the mother of contestee, and the executrix, although the latter's right to act as such is, of course, dependent upon the validity of the will, which is the question in issue. We think the record made at the trial below, to which reference will later be made, shows that first one and then the other of the parties have waived the privilege of the statute.

That the statute may be waived by a proper party in interest is clearly established by the great weight of authority. In the case of *National Annuity Association* v. *McCall*, 103 Ark. 206, 146 S. W. 125, 48 L. R. A. (N. S.) 418, it was said: "This statute accords the privilege to a patient of objecting to disclosures of matters communicated to or information obtained by a physician as such, and this privilege does not cease with the death of the patient. But this privilege may be waived by the patient himself and after his death by his representative; and so, too, where one occupies a relation to the deceased by reason of a contract, such as is involved in this case, wherein he is made the beneficiary of a life insurance policy, he has by virtue of this statute a right to object to testimony relative to the communications therein named as privileged, and he has also the right to waive this privilege conferred by it. 4 Wigmore on Evidence, § 2387;

*Penn. Mut. Life Ins. Co.* v. *Wiler,* 100 Ind. 92, 50 Am. Rep. 769." See, also, 40 Cyc. chapter witnesses, page 2397, and cases cited in the note to that text, and cases cited in the notes by the annotater to the cases of *Maine* v. *Maryland Casualty Co.,* 15 A. L. R. 1536, and *Schornick* v. *Schornick,* 31 A. L. R. 159; *Maryland Casualty Co.* v. *Maloney,* 119 Ark. 434, 178 Ark. 387, L. R. A. 1916A, 519; *Bradway* v. *Thompson,* 139 Ark. 154, 214 S. W. 27.

We are not unmindful of the case of *Fidelity & Casualty Co.* v. *Meyer,* 106 Ark. 91, 152 S. W. 995, 44 L. R. A. (N. S.) 493, where it was held, (to quote a head-note) that "where a policy of insurance does not contain any provision waiving the statutory privilege as to the testimony of attending physicians concerning information received in the course of professional employment, the privilege is not waived by plaintiff who introduces an affidavit by a physician of the death of the insured." That was a case, however, where the beneficiary in a policy of insurance had furnished, as part of the proof of loss, the certificate of a physician in an attempt to secure an amicable adjustment and settlement, and there was no litigation then pending. Here the death certificate was offered by the heirs in the trial before the court, and when this was done the right to object to the testimony of the physician who made the certificate was waived, if, indeed, the contesting heirs had the right to object to its introduction.

The statute quoted may therefore be waived, and we think the record shows that it has been. It was waived by the heirs when they introduced the record of the Registrar of Vital Statistics, which contained, and was based upon, a certified copy of the death certificate prepared by Dr. Fletcher as the attending physician during the last illness of the testatrix. This certificate was not introduced to prove her death, for that was an admitted fact, and, had it not been, could easily have been proved without reference to the certificate. The purpose of its introduction was to prove death from chronic alcoholism,

a circumstance calculated to affect mental capacity, and which, according to the testimony of a medical expert offered by contestants, did affect the mental capacity of the victim who had died from that cause.

So, therefore, when this certificate was offered in evidence (over contestee's objection), the purpose of the statute could no longer be affected. The patient's life had been laid bare; her infirmity, against which she had vainly struggled and had sought to conceal, as is shown by other testimony in the case, was disclosed. When this had been done by the heirs, we perceive no reason why the physician who made the certificate might not be called by the executrix to explain and interpret his certificate, as no purpose which § 4149, C. & M. Digest, was intended to subserve could then prohibit this from being done. Dr. Fletcher testified that Mrs. Gathright was sane on the day the will was made, and we think no error was committed in admitting this testimony under the facts stated.

Mrs. Helen Knight, who was the superintendent of the hospital where Mrs. Gathright died and was one of the attesting witnesses to the will, was permitted, over contestants' objection, to answer "Yes, sir" to the following question: "Q. In your opinion or judgment was she capable of making a will on the date that it was made?" It was specifically objected that this was the very question which the jury was called upon to determine and should not have been answered by the witness for that reason, and that the competency of a person to make a will could not be proved by a lay witness.

It may be first said that this question and answer appear in the testimony of Mrs. Knight taken at the trial in the probate court, a transcript thereof being read in the circuit court as her deposition. No specific objection was made to this question and answer in the probate court, and the witness was not present at the trial in the circuit court. But, when this deposition is read in its entirety, it appears that the witness stated fully the facts

upon which the opinion was based, and that she had the opportunity to observe Mrs. Gathright to a sufficient extent to express an opinion on Mrs. Gathright's sanity.

Had objection been made to the form of this question when it was propounded to the witness at the trial in the probate court, it might then have been reformed to call for an opinion on Mrs. Gathright's sanity, rather than on her testamentary capacity, but no such opportunity existed when the deposition was read at the trial in the circuit court.

In the case of *Sloan* v. *Newman,* 166 Ark. 259, 266 S. W. 257, it was said: "It is next contended that the court erred in permitting a witness, Miss Rose, who was a nurse in the hospital in New Orleans where Mrs. Rogers died, to state, by comparison with other persons with whom the witness came in contact professionally, her opinion of the mental capacity and strength of the testatrix, Mrs. Rogers. Conceding that the form of the question constituted an awkward method of eliciting the testimony, yet it was perfectly competent to take the statement of the witness as to Mrs. Rogers' mental capacity at the time she was in the hospital, which was a short time after the execution of the will, and while she was attended professionally by the nurse, who was shown to be a person of long experience and who had opportunities of judging the mental capacity of Mrs. Rogers. There was no error in allowing the witness to testify on this subject, and the form of the question was not prejudicial."

So, here, we say that, conceding that the form of the question constituted an awkward method of eliciting the testimony, yet it was perfectly competent to take the statement of the witness as to Mrs. Gathright's mental capacity at the time she was in the hospital, when and where the will was signed.

Moreover, while Mrs. Knight was a lay witness, she was an attesting witness. There was no contention that Mrs. Gathright was normally a person of unsound mind,

but the cause was tried upon the theory that her illness had progressed to such an extent that her mind was so far affected by the disease from which she died that she could not remember the nature, character and extent of her property, and did not know the disposition she was making of it, and did not appreciate the merits of those persons who, as her heirs-at-law, might have claims upon her bounty. Conscious intelligence upon these questions constitutes what is known in the law as testamentary capacity, and the existence of this capacity is the question which the jury was called upon to decide. But attesting witnesses, although lay and not expert, are permitted to express opinions on this subject. Of course, the value of this testimony may be tested by an examination of the witness to disclose his or her own intelligence and the opportunities the witness had to form the opinion and its consequent value.

In the early and well considered case of *McDaniel* v. *Crosby*, 19 Ark. 533, it was said: "The attesting witnesses to a will are regarded in law as placed around the testator, that no fraud may be practiced upon him in the execution of the will, and to ascertain and judge of his capacity. (Citing, among other cases, that of *Kelly's Heirs* v. *McGuire*, 15 Ark. 600, and *Abraham* v. *Wilkins*, 17 Ark. 292). On this ground these witnesses are permitted to testify as to the opinion they formed of the testator's capacity at the time of executing his will, and their opinions, and the facts they state as occurring at the time are, generally, to be particularly regarded by the court, though the opinions of other witnesses are ordinarily inadmissible, at least unless founded upon facts testified to by themselves or others in the cause. (See 1 Jarman on Wills, 74). Witnesses, other than the attesting witnesses, must state the facts, but not their opinion or judgment merely of the sanity or insanity of the testator. See *Kelly* v. *McGuire, supra; Abraham* v. *Wilkins, supra;* Jarman on Wills, 75."

That opinion was based upon the case of *Kelly's Heirs* v. *McGuire*, 15 Ark. 555, which has always been

regarded as a landmark in this State, and in that case it was said: "To this instrument, there were four subscribing witnesses. Subscribing witnesses, it is said, are placed around a testator to ascertain and judge of his capacity. 3 Mass. 237; 4 Mass. 593. Their attention is supposed to be directed to that point, and they may give their opinions in respect to the sanity or capacity of the testator. 1 Greenl. Ev. 440. * * * There are strong reasons for it (the rule just stated). Human language is imperfect, and it is often impossible to describe, in an intelligible manner, the operation of the mind of another. We learn its conditions only by its manifestations, and these are indicated not alone by articulate words, but by signs, gestures, conduct, the expression of the countenance, and the whole action of the man. Nor is there any danger in such opinions, when the reasons for them are disclosed. The value and force of the opinion depended on the general intelligence of the witness, the grounds upon which it is based, the opportunities he had for accurate and full observation, and his entire freedom from interest and bias. (Citing cases.)"

See, also, *Potts* v. *House,* 6 Ga. 324, 50 Am. Dec. 329, and cases cited in the annotater's note to that case, and vol. 7 of Notes to American Decisions, page 695, further annotating the case of *Potts* v. *House, supra,* and *Clapp* v. *Fullerton,* 34 N. Y. 190, 90 Am. Dec. 681.

One of the instructions specifically objected to was numbered 5, and reads as follows: "You are instructed that the law presumes that Mrs. Lillian Gathright, at the time of the execution of the will by her, was of sound and disposing mind and memory, and the burden is upon the contestants to prove, by a preponderance of the evidence, that she was not of sound mind."

This instruction must, of course, be read in connection with the other instructions given by the court, one of which, given at the request of contestants, told the jury that: "If you further find from a preponderance of the evidence that on said day and at the time of executing

said will she did not have the mental capacity, as defined in these instructions, to make a will, you will find against the will."

A similar instruction was given on the question of undue influence, but that feature of the case is not insisted upon for the reversal of the judgment of the court admitting the will to probate.

Instructions similar to the one quoted have been frequently approved by the court, beginning with the case of *Kelly's Heirs* v. *McGuire, supra.* A late case is that of *Hamilton* v. *Hamilton,* 178 Ark. 241, 10 S. W. (2d) 377, where it was said: "In cases involving the issues of insanity, incompetency and undue influence, this court has ruled that the burden rests upon the contestants of the will, when it appears upon its face to have been executed in accordance with the statutory requirements and when properly proved and probated. *McCulloch* v. *Campbell,* 49 Ark. 367, 5 S. W. 590; *Smith* v. *Boswell,* 93 Ark. 66, 124 S. W. 264; *Miller* v. *Carr,* 94 Ark. 176, 126 S. W. 1068. Section 10514 of Crawford & Moses' Digest provides that a will so proved, recorded, and signed by the clerk of probate and attested by the seal of office, may be read as evidence, without any further proof thereof. In other words, when such a will is introduced, it makes a *prima facie* case which must be overcome by the proof introduced by the contestants of such a will."

A similar instruction was approved in the case of *Taylor* v. *McClintock,* 87 Ark. 243, 112 S. W. 405.

The subject was reviewed by Mr Justice Battle, with his usual care, in the case of *Bims* v. *Collier,* 69 Ark. 245, 62 S. W. 593, where he said: "In *McCulloch* v. *Campbell,* 49 Ark. 373 (5 S. W. 590), Mr. Justice Smith, in delivering the opinion of the court, said: 'There is some confusion in the reported cases on the adjustment of the burden of proof of insanity in will contests. But we think the weight of authority, both in England and in this country, establishes the rule that the production of a proper writing purporting to be the will of a deceased person,

which is rational on its face, and which is proved to have been executed and witnessed in accordance with the statute, makes a *prima facie* case, and devolves upon the contestants the *onus* of showing the testator's incompetency. The rule rests upon the presumption that all men are sane until the contrary is proved.'" He proceeded further to say: "We do not think that the presumption of sanity in a case in which a will is contested has any greater force than any other rebuttable or disputable presumption of law has in any ordinary civil case. When such presumptions are overcome by evidence, the conflicting evidence on the question of fact is to be weighed, and a verdict rendered in favor of the party whose proofs have most weight; and the presumption is of value only as it has probative force, 'except it be that on the entire case the evidence is equally balanced, in which event the arbitrary power of the presumption of law will settle the issue in favor of the proponent of the presumption.' In *Graves* v. *Colwell*, 90 Ill. 616, it is said: 'It has been said that presumptions of law derive their force from jurisprudence, and not from logic, and that such presumptions are arbitrary in their application. This is true of irrebuttable presumptions, and, primarily, of such as are rebuttable. It is true of the latter until the presumption has been overcome by proofs, and the burden shifted; but when this has been done, then the conflicting evidence on the question of fact is to be weighed, and the verdict rendered, in civil cases, in favor of the party whose proofs have most weight, and in this latter process the presumption of law loses all that it had of mere arbitrary power, and must necessarily be regarded only from the standpoint of logic and reason, and valued and given effect only as it has evidential character. Primarily, the rebuttable legal presumption affects only the burden of proof, but if that burden is shifted back upon the party from whom it first lifted it, then the presumption is of value only as it has probative force, except it be that on the entire case the evidence is equally balanced, in which

event the arbitrary power of the presumption of law would settle the issue in favor of the proponent of the presumption.' "

The will in this case is rational on its face, and was executed and witnessed in accordance with the statute, and we do not think that the instructions, when read together, offend against the law as announced in the opinion by Judge BATTLE and the other cases cited.

The other instruction alleged to be erroneous and prejudicial was numbered 12, and the portion objected to reads as follows: "The fact that it leaves all of her estate to one relative to the exclusion of others does not raise a presumption of lack of capacity in her to make such will."

It is argued that the instruction was a charge upon the weight of evidence, and excluded from the consideration of the jury the question whether the will was an unnatural one and such a will as a sane person would have made and in conflict with other instructions which permitted the jury to consider the circumstances stated in the instruction for that purpose.

We think the objections stated are not well taken. It is true that instructions were given at the request of contestants which permitted the jury to consider the fact that the will excluded the persons who, in the absence of a will, would be the heirs-at-law, as a circumstance to be considered in determining whether the will was that of a sane person; but there is no conflict in the instructions in this respect. Instruction numbered 12 does not tell the jury not to consider this circumstance, but only declared that the circumstance did not raise a presumption of lack of capacity to make a will. It was not a charge upon the weight of testimony, but was a declaration of law to the effect that one might ignore his heirs-at-law in the disposition of his property by will, and the cases are unanimous to this effect. It is, of course, a circumstance to be considered in determining the sanity of one who makes such a will, but the instruc-

tion did not exclude it for that purpose. It merely told the jury that the circumstance itself created no presumption against sanity, and there was therefore no error in giving it.

Upon a consideration of the whole case we find no error, and the judgment must be affirmed, and it is so ordered.