HENDRY v. WILSON, EXECUTOR.

4-6355                                                  151 S. W. 683

Opinion delivered May 26, 1941.

T. A. *Gray,* for appellant.

*S. M. Casey* and *Shields M. Goodwin,* for appellee.

McHANEY, J.    Miss Nora Hendry died testate in Independence county on March 29, 1940.    Two wills purporting to have been executed by her were presented for probate, one dated and properly attested by two witnesses on December 29, 1939, and the other on February 15, 1940, but the two witnesses to the latter did not sign as such at the same time or in the presence of each other. The trial court found that the will, dated December 29, 1939, hereinafter referred to as will No. 1, was her last will and testament and admitted same to probate.    As to the will of February 15, 1940, hereinafter referred to as will No. 2, the court found that it was not properly executed and attested and refused to admit it to probate. Hence, this appeal.

The testatrix left an estate of about $9,000.    In will No. 1 she gave $500 to each of her brothers and sisters, appellant being a brother, $500 to appellee, J. B. Wilson, who was named executor, and all the remainder of her estate she gave to her nephew, F. T. Hendry, son of appellant, A. F. Hendry.    The father and son are sometimes referred to as "old" Frank and "little" Frank respectively.    In will No. 2, she gave $500 to each of her brothers and sisters, other than appellant, $500 to F. T. or "little" Frank Hendry and all the remainder of her estate she gave appellant or "old" Frank Hendry.

Appellant concedes that will No. 1 was properly executed and attested, but insists that it was annulled and revoked by will No. 2.    If the latter were properly executed and attested, he would be right about it, and the case would have to be reversed.    Briefly stated, the facts with reference to the making, executing and attesting of will No. 1 are that F. T. or "Little" Frank Hendry

was visiting his aunt in Cushman, Arkansas, in December, 1939, when she asked him about making her will and wanted him to find out how many witnesses were required to attest a will. He saw Mr. Casey in Batesville, who told him two were required, which fact he reported to his aunt. In her own handwriting she wrote down the data as to how she wished her will to be prepared and asked him to take it to Mr. Casey to draw her will, which he did. The will was prepared by Mr. Casey in duplicate, according to her written instructions, and was taken by her nephew and delivered to her. After waiting two or three days, she wrote and sent by little Frank two sealed notes, one to Remmel Baxter and another to N. K. Sims, requesting them to come to her home on the night of December 29, 1939. And by her further direction she caused "Little" Frank to keep "old" Frank up town that night while she and her witnesses executed the will. These parties complied with her request and both copies of the will were properly signed and attested by them as required by law. One copy she gave to "Little" Frank and one copy she kept among her papers.

Regarding will No. 2, appellant testified that his sister became dissatisfied about her former will and wanted to make another; that she wrote a letter and asked him to have some new papers fixed up, which he did; that he brought Mr. Gray his sister's instructions as to her new will and he prepared the will which witness took back to her and she signed it the same day, February 15, 1940. This will was written in duplicate and both copies signed by the testatrix. It was witnessed by J. W. Page who went to the house at the request of appellant on the same day, and appellant says she destroyed her copy of will No. 1 at that time. One copy of this will bore the signature of E. D. Chavers as a witness, and it is conceded that Chavers was a total stranger to appellant, the testatrix, and to Page, the other witness, and that it was not signed by him, Chavers, in Page's presence. Appellant and Chavers explain the presence of his signature on the will as follows: Several days after February 15, Chavers went to the home of the testatrix to see her about buying some timber on her land. She told him she couldn't sell

it as she had willed it to appellant and he (appellant) showed him (Chavers) the will. He told her she had only one witness and she asked him to sign as a witness, which he did. Chavers had never seen the testatrix before, nor she him, neither did he, Page and appellant know each other, nor had either Page or appellant ever heard of Chavers or know where he lived. He put no address on the will by which he could be reached.

Under this state of facts we think the court properly rejected will No. 2 as not having been properly attested. Section 14512 of Pope's Digest provides the mode of execution of wills. It must be subscribed by the testator at the end of the will, or by some one for him, at his request. It must be signed in the presence of each of the subscribing witnesses, or shall be acknowledged by him to have been so made to each of them. He must, at the time of signing or acknowledging, declare the instrument to be his will and testament. "Fourth. There shall be at least two attesting witnesses, each of whom shall sign his name as a witness, at the end of the will, at the request of the testator."

Conceding that Page witnessed will No. 2 properly, the court was justified in finding that Chavers did not. While it was not essential that Page and Chavers should sign as witnesses in the presence of each other, *Payne* v. *Payne,* 54 Ark. 415, 16 S. W. 1, it was essential that the testatrix acknowledge to Chavers that she had signed same as her will and testament, and he must have signed as a witness at her request. He and appellant so testified, but the court did not believe them and properly so, under the circumstances. Some of these circumstances are as follows: Chavers was a total stranger to all these parties, including the testatrix—he just happened to drop in to buy some timber; the testatrix knew two witnesses were required, as she had, only a month and a half before, executed her will with two old neighbors and friends as witnesses; after being cited to produce the will, appellant attempted to file the original copy of will No. 2 with only Page's name as a witness; this was rejected by the clerk; later notice was served on Page to deliver the copy which

had been left with him by appellant which had been signed by both Page and Chavers, and it was filed.

The fact that she executed duplicate copies of will No. 1 and caused them to be properly attested, one of which she gave to the principal beneficiary, tends to show that she thought something might happen to destroy her will. "Little" Frank testified that she told him: "If your dad ever finds out I have made this will, he will tear it up. You will have trouble with him." Even though it be conceded, as testified by appellant, that she tore up her copy of will No. 1 and told him to burn it, which he did, this would not necessarily be a revocation of the will as she knew there was a duplicate thereof, executed with the same formality. She is supposed to have torn up this will in the presence of Page, but he did not so testify, but only that she tore some paper.

The argument is made that appellant who is her brother had been living with and taking care of his sister for many years, but the proof is that he had been living off of her and that she took care of him. Appellant was supported by her and he had no income or property. "Little" Frank had lived with his Aunt Nora from a mere child until he was 18 years of age, when he left to go on his own. He corresponded with her and came to see her two or three times a year. Several witnesses testified to her attachment for him. A sister, Mrs. Wilson, testified that she talked with her sister about her will after February 15, 1940, and her sister told her she had made a will and had disposed of her property in the manner set out in will No. 1.

We conclude that the court properly admitted will No. 1 to probate and properly rejected will No. 2. The court probably thought, as we do, that Chavers' name was subscribed to the will after the death of the testatrix.

Affirmed.