GOCIO *v.* SEAMSTER, JUDGE.

4-6655                          160 S. W. 2d 194

Opinion delivered March 2, 1942.

*Triplett & Williamson,* for petitioners.

*Vol T. Lindsey,* for respondent.

McHANEY, J. This is a petition for a writ of prohibition to the Benton probate court to prohibit said court from proceeding in the administration of the estate of B. L. Gocio without jurisdiction, or in excess of its jurisdiction. B. L. Gocio died testate a resident of Benton county on January 18, 1938. As directed in his will, petitioner, a son by a former wife, and Charles Gocio, a son by his widow, Maggie Gocio, were, on March 5, 1938, appointed and qualified as executors of the estate of the father, said B. L. Gocio. In addition to petitioner, the testator left four children by his former wife surviving him, to-wit: Agnes Wilson, Mrs. George Haig, Ida Haizlip, and Jennie Gocio. In addition to his son, Charles,

by his second wife and widow, he left surviving him his daughter, Amelia Hardister. It appears that this litigation over the estate of the testator grows out of a contest between the first set of children, represented by petitioner, and the widow and the second set of children.

On May 15, 1939, petitioner filed his first annual settlement, in which he stated that his co-executor, Charles Gocio, had declined to sign any papers with reference to said estate. In this settlement he charged himself as executor with two items of receipts as follows:

By collections through April 21, 1939,
 from Chicago Note 37............................$ 4,266.67
By deposit Denver National Bank,
 January 1, 1938................................................ 7,509.75

            $11,776.42

He credited himself with a number of items he had paid constituting claims against the estate and being for funeral expenses, hospital, nursing and medical expenses, and for his personal traveling expenses, notes of the testator to the bank, taxes, advances he had made to the widow and heirs, and a claim of his own for moneys advanced testator in his lifetime of $1,477.05—all in such a sum that left a balance in his hands of $815.12. To this settlement, the widow, Charles Gocio, and Amelia Hardister filed eight exceptions: (1) that he did not charge himself with the whole amount of the estate and there has been no appraisement or inventory thereof filed and that testator was the owner of real estate notes, mortgages or bonds on Chicago property of about $75,000; (2) that he has collected more from Chicago notes or bonds than reported and from other than note No. 37; (3) that testator owned a large rental property in Denver, Colorado, and that said executor took charge of same, collected the rents in a large sum and has made no account thereof; (4) that in addition to the amount he charged himself as shown above, his settlement states that the estate is due the sum of $2,636.40 as the share of B. L. Gocio in the estate of E. P. Notrebe, and that said executor has or should have a much larger sum in his possession than the amount reported, and should be required to account

therefor, as B. L. Gocio estate has a one-sixth interest in the Notrebe estate; (5) that Joseph Gocio is indebted to the estate of B. L. Gocio in the sum of $4,062.50, evidenced by two promissory notes, and that he should be required to account therefor and charge himself therewith; (6) that he has taken charge of all the assets of said estate to the exclusion of Charles, made all collections, paid all claims, without the knowledge or consent of exceptors, and he should be required to disclose all assets; (7) that the claim of $1,477.05 which he paid himself was not due him, no claim therefor being filed, nothing probated and no order of court allowing it, and there are no vouchers attached to the settlement as required by law; and (8) that Joseph Gocio is also the executor of the Notrebe estate, which is being administered in Colorado and in Jefferson county, Arkansas, and that B. L. Gocio had an interest in said estate which he should account for in this proceeding. Thereafter, petitioner moved to quash all exceptions, except No. 7, to which exceptors filed a response.

On March 28, 1940, petitioner filed what he captioned "The 1940 Account Current," in which he sets out in detail the receipts and disbursements from the rental property in Denver, heretofore mentioned, and referred to as two apartment houses, showing gross receipts from rents in 1938 and four months in 1939 of $36,477.77, and from which he deducts in operating expenses and "other expenses and charges" the sum of $32,332.92 leaving a balance due the Gocio estate of $4,144.85, with which amount he charges himself, in addition to the amount brought forward from his previous report, and two-thirds of the collections on note No. 37 in the sum of $2,866.67 and the amount received as the one-sixth interest of testator in the Notrebe estate. He took credit for inheritance and estate taxes, insurance on property and expenses of administration, and showed a balance on hand of $5,571.44.

It was alleged in this report, among other things that the Denver apartments are under the management of one Willie Nobles; that their operation entails large expenditures, including taxes and interest on a loan secured by

a lien thereon; that B. L. Gocio was the owner of an undivided 11/12ths interest therein and he was the owner of the other 1/12th interest; that the proceeds therefrom, exclusive of certain cash expenditures by the manager, were deposited in the Denver National Bank to the credit of Gocio & Gocio, during the lifetime of his father, and that the checks were drawn against this account to pay other operating expenses and a division of profits, and that this arrangement was continued by him after the death of his father until the appointment of James D. Benedict, about May 1, 1939, by the probate court in Denver, as ancillary administrator. Numerous other matters were detailed in said report regarding the management of said apartments and the disbursement of the receipts therefrom, including the partnership account in said bank, but we think it unnecessary to set them out here. Ten exceptions were filed to this report on various grounds and petitioner again moved to quash all of them except the 4th and 8th.

The matter was submitted to the court on the motions to quash certain exceptions to each said report, petitioner entering his special appearance on the motions to quash and reserving his general appearance for the purpose of objecting to the jurisdiction of the court to try said exceptions. The motions were heard upon said settlements, exceptions and motions, and the testimony of certain witnesses for petitioner, including himself and his attorney, and exhibits thereto, and the court overruled said motions to quash "for the reason the questions raised by such exceptions are necessary to be heard to determine the advisability of approving the reports or continuing the hearing on them until any question of a disputed title to property involved could be determined in the proper forum."

Petitioner then applied to this court for a writ of prohibition to the Benton probate court and he contends that the action of said court in overruling his motions to quash certain exceptions is tantamount to a holding that the court has jurisdiction to try title to property, that is, that the court is about to proceed to try the question of the disputed title to an 1/3 interest in Chicago Note No. 37

and all of Chicago Note No. 38, he claiming to own such interest in note 37 and all of 38; also to try the question of his liability on the two notes in the sum of $4,062.50, set up in the fifth exception to the first report; also to re-try the administration of the Notrebe estate in Denver, already settled by the courts of Colorado; and also to disapprove all expenditures made by him in operating the Denver apartments.

We think petitioner is in error in these contentions. Probate courts are given plenary powers under the constitution and statutes of this state in the matter of estates of deceased persons, as will be found in the first chapter of Pope's Digest entitled "Administration." By § 182 executors and administrators are required to file annual reports or accounts current, "in which he shall charge himself with the whole amount of the estate according to the sales bill and appraisement, including all debts due the estate and money on hand at the death of the deceased, and credit himself with all sums of money lawfully expended in settling such estate either by the payment of debts or otherwise exhibiting with such account the receipts and vouchers for all moneys paid out." It does not appear that this statute has been complied with in either report filed. By the next section, § 183, the court is required to examine said report. By § 189, "any person interested as heir, legatee or creditor may file exceptions to such account or any item thereof. . . ." And by § 192, the court is required to hear such exceptions, and may refer same to an auditor, § 193, and may hear testimony for or against such exceptions and may restate such account, § 194. So, it will be seen, by a perusal of these statutes, that original exclusive jurisdiction is given to probate courts to hear and determine many of the matters raised by the exceptions. If the court should erroneously determine them, an appeal will lie to this court for a trial de novo, Campbell, Admr. v. Hammond, ante, p. 130, 156 S. W. 2d 75, but prohibition will not lie.

The order of the court overruling the motions to quash indicates that the court will not try questions of disputed title to property, but would continue the hear-

ing on the reports until those questions were determined in the proper forum, and we will not, in this proceeding, assume that the court will exceed its jurisdiction in this regard.

As to the argument that the court is about to open up and re-try the administration of the Notrebe estate in Denver, and that the full faith and credit clause of the federal constitution precludes any inquiry into this matter because of the judgment of the court in Denver, it may be that all parties to that proceeding and their privies will be concluded by it, but as to others a different rule would control. A very interesting and recent decision of the Supreme Court of the United States will be found in *Julien Riley and Hughes Spalding, Executors, etc. v. The New York Trust Co., Admr.*, 62 S. Ct. 608, 86 L. Ed. *, to which the attention of counsel and the court is called.

We think there is no doubt that the court may inquire into the exceptions relating to the Denver apartments, including the income therefrom and the reasonable expense of operating them. It is not disputed that the court has jurisdiction to require petitioner to disclose assets of the estate, including what, if anything, he owes the estate on notes or otherwise, and of course it has the jurisdiction to require petitioner to charge himself with any amount he has wrongfully paid to himself or to others without presenting a claim to the executors and to the court for allowance.

It appears to us that petitioner is exceeding his authority in assuming complete control of said estate to the exclusion of his co-executor. Both are equally responsible for the proper administration thereof and the court should require joint action in its management, the allowance and payment of claims and of reports and settlements to it. If they cannot agree, the dispute should be submitted to the court for directions.

Since the probate court had jurisdiction of the subject-matter and the parties, and since it does not appear that its jurisdiction is about to be exceeded, the writ will be denied. It is so ordered.

* Page not available at time of going to press.