GRAY *v.* FULTON.

4-7008                    170 S. W. 2d 384

Opinion delivered April 12, 1943.

676

*Price Shofner* and *June P. Wooten,* for appellant.

*Carmichael & Hendricks,* for appellee.

GRIFFIN SMITH, C. J. The appeal questions an order admitting to probate a will executed by Mrs. Ella Gray April 21, 1939.

Appellant married the testatrix (who, as a widow, was Ella Tribble) January 2, 1939. She died May 21, 1941. Shortly thereafter a will dated January 15, 1941, was admitted to probate. Appellant excepted on the ground that it was not legally executed, that the testatrix was mentally incompetent, and that mutilations rendered it unintelligible. Appellees, who are two sisters of the decedent, also a niece and two nephews, admitted in their answer that Mrs. Gray, on January 15, 1941, was not of disposing mind and memory. They joined in a prayer that the order of probation be annulled. The court accordingly made such order.

Three and one-half months after her marriage, Mrs. Gray executed a will in which her husband was favored. It was delivered to Gray and remained in his possession. He did not know other wills had been executed.

When appellant attacked the will of 1941 he alleged that his wife died intestate and that he was entitled to share in her estate under § 4422 of Pope's Digest, as amended by Act 313 of 1939.

After the court rendered its judgment invalidating the 1941 will, appellees filed what is referred to in the briefs as Will No. 2, dated April 21, 1939, and procured a judgment admitting it to probate. It will be observed that the will approved by the court was made four days after Mrs. Gray had delivered to her husband the will of April 17.

The certificate of attesting witnesses is: "We, the undersigned, in the presence of each other and in the presence of the testatrix, after having heard her declare this to be her last will and testament, sign our names as witnesses to the same at her request."

Appellant complains that the certificate does not contain language affirmatively showing that the testatrix signed in the presence of each witness; nor was there acknowledgment by the testatrix to each of the attestants. Other requirements of § 14512 of Pope's Digest, as construed in *Hendry* v. *Wilson, Executor,* 202 Ark. 580, 151 S. W. 2d 683, are declared to exist.[1]

Mrs. Margaret Shackleford and Mrs. Josie Guenther were subscribing witnesses. Mrs. Shackleford, who was the scrivener, testified that she witnessed the signing of the will. Counsel for appellant insist that the answer given by Mrs. Shackleford was in response to the question, "Is that your signature?" She was then being shown the certificate which, of course, contained her own signature. The certificate was preceded by the presumptive signature of Mrs. Gray. Other testimony given by Mrs. Shackleford is shown in the footnote.[2]

Effect of Mrs. Shackleford's testimony is that the signature to the certificate was hers, and "*that* statement is correct." She witnessed "the signing of that will," and "those statements are correct." She was at

---

[1] Applicable statutory requirements are (1) that subscription must be by the testator at the end of the will, or by some person for him, at his request; (2) such subscription shall be made by the testator in the presence of each of the attesting witnesses, or shall be acknowledged by him to have been so made to each of the attesting witnesses; (3) the testator, at the time of making such subscription, or at the time of acknowledging the same, shall declare the instrument so subscribed to be his will and testament; (4) there shall be at least two attesting witnesses, each of whom shall sign his name as a witness, at the end of the will, at the request of the testator. [See Act 401 of 1941, p. 1169.]

[2] On cross-examination Mrs. Shackleford was told by one of appellant's attorneys that the law required a will to be witnessed by two persons in the presence of the testatrix and in the presence of each other. Reading from the attestation the attorney said: "It says here, 'after having heard her declare . . .'" Mrs. Shackleford replied: "That's right." There was then read to the witness that part of the certificate:—"We, the undersigned, in the presence of each other and in the presence of the testatrix, after having heard her declare, etc. . . ." The question was then asked: "And you say that's the way it was done?" The answer was: "Yes, sir."

Mrs. Guenther's home when she "witnessed this will: . . . both of us witnessed it—right there in Mrs. Guenther's dining room," . . . and this occurred . . . "after having heard her declare"—

The record suggests what may or may not have been a break in continuity of thought, due to the way a question would be asked before answer to the preceding one had been completed; but in substance Mrs. Shackleford's testimony shows substantial compliance with the statute.

Mrs. Guenther's testimony, however, is more explicit. She was asked: "You heard Mrs. Shackleford's testimony about the execution of that will, over at your house?" There was an affirmative answer. Question: "And you and she witnessed the signature of Mrs. Gray, at her request and in her presence and in the presence of each other?" Answer: "Yes, sir."

Seemingly counsel for appellant thought the evidence sufficient, for the following appears: "Mr. Hendricks: "If the Court please, that makes a *prima facie* case. [Mr. Gray] is attacking—it's up to him now." Mr. Shoffner: "All right."

Appellant lays stress upon the fact that the will was not probated in common form, but was offered after the 1941 will had been admitted to probate and had been attacked and repudiated by those who offered it, and who admitted that the testatrix was mentally incompetent twenty-one months after the will was made. Mrs. Gray was about seventy years of age. She married appellant in January, 1939, and sustained a severe fall in September of the same year.

We agree with the probate court that evidence did not warrant a finding that Mrs. Gray was overreached, or that she lacked capacity to make the will. A somewhat anomalous situation is that while appellees conceded Mrs. Gray was incompetent when she made the will in 1941, appellant's attorney, in examining Mrs. E. L. Thompson as a witness, sought to bring into the record certain conversations between Mrs. Gray and Mrs. Thompson— conversations which, inferentially, occurred "within the last few months." The Court held (and we think cor-

rectly) that the testimony was inadmissible. An exception was taken. If appellant's contention that the evidence was competent had been correct, the presumption would attach, of course, that if facts were to be established by statements made by Mrs. Gray she must have been competent.

The question most earnestly argued by appellant relates to the burden of proof. We have had occasion, since Amendment No. 24 to the constitution was adopted in 1938, to determine what effect shall be given in this court to the judgment admitting a will to probate. Formerly an appeal reached the circuit court from the probate court's judgment admitting or refusing to admit the will. In other words, when circuit court acted, there had been a preceding judgment to which certain presumptions attached, notwithstanding the fact that in circuit court the trial was *de novo*. Under Amendment No. 24 appeals come here without interposition of circuit court. Juries are dispensed with. The Amendment was considered in *Campbell, Administrator, v. Hammond*, 203 Ark. 130, 156 S. W. 2d 75. It was there said that "the ends of justice will be best served by a trial *de novo* [in the Supreme Court], just as are chancery appeals." The intention was to say that if the judgment appealed from is supported by a preponderance of the evidence, as distinguished from substantial evidence, it will be affirmed if that is the only question. The concurring opinion of Mr. Justice Frank G. Smith is to the same effect.[3]

In *Schirmer v. Baldwin*, 182 Ark. 581, 32 S. W. 2d 162, an instruction of Little River Circuit Court was: ". . . the law presumes that [the testatrix] at the time of the execution of the will by her was of sound and disposing mind and memory, and the burden is upon the contestants to prove, by a preponderance of the evidence, that she was not of sound mind."

While holding that the instruction should be read in connection with others, it was said that similar instructions had often been approved, beginning with the case

[3] See *Lewis v. Smith*, 198 Ark. 244, 129 S. W. 2d 229; *Wooten v. Penuel*, 200 Ark. 253, 140 S. W. 2d 108.

of *Kelly's Heirs* v. *McGuire,* 15 Ark. 555. *Hamilton* v. *Hamilton,* 178 Ark. 241, 10 S. W. 2d 377, was cited, where it was said: "In cases involving the issues of insanity, incompetency and undue influence, this court has ruled that the burden rests upon the contestants of the will, when it appears upon its face to have been executed in accordance with statutory requirements *and when properly proved and probated."* [4]

The words appearing in italics are emphasized by appellant in support of his contention that in the instant case, where the will had not been admitted to probate, but the controversy was solely to determine whether it should be approved, no presumption of sanity attached and it was requisite to establish mental capacity.

We do not think the Hamilton decision turns upon the words here emphasized. In the Schirmer-Baldwin case it is said that the subject was reviewed by Mr. Justice Battle, who wrote the Bims-Collier opinion, 69 Ark. 245, 62 S. W. 593. Judge Battle quoted from *McCulloch* v. *Campbell,* 49 Ark. 367, 5 S. W. 590, where Mr. Justice William W. Smith said:

"There is some confusion in the reported cases on the adjustment of the burden of proof of insanity in will contests. But we think the weight of authority, both in England and in this country, establishes the rule that the production of a proper writing purporting to be the will of a deceased person, which is rational on its face, and which is proved to have been executed and witnessed in accordance with the statute, makes a *prima facie* case, and devolves upon the contestant the *onus* of showing the testator's incompetency. The rule rests upon the presumption that all men are sane until the contrary is proved."

Affirmed.

---

[4] Italics supplied.