LOCKETT *v.* ADAMS.

4-8415                             208 S. W. 2d 428

Opinion delivered February 16, 1948.

*David M. Grant* and *J. R. Booker,* for appellant.

*Jno. S. Gatewood, Ralph Morrow* and *Chas. Jacobson,* for appellee.

GRIFFIN SMITH, Chief Justice. Lillie M. Jones died intestate in 1946. Her husband had been Scipio A. Jones, well-known Negro lawyer, whose estate she had administered. A petition, followed by interventions, asked Probate Court to determine who were the heirs of Lillie M. Jones. From a judgment that the persons designated were entitled to the interests set out, Minnie Lockett has appealed.

In an amended order of September 2, 1947, entered *nunc pro tunc* as of April 1, 1947, the distributive interests were adjudged, based upon the following findings: Tom and Ben Lockett were full brothers of Lillie Jones, and Walter Allen was a half brother. Daughters of Tom Lockett were Ada Cole and Minnie Lockett, who were half sisters. Ben Lockett had a son, Teo, and a daughter, Reola Travis. Walter Allen had one daughter, Luvenia Adams. Teo Lockett, who inherited from his father, Ben, died intestate, leaving a daughter, Willie May Lockett-Johnson. A one-third interest was awarded Luvenia Adams, and to Ada Cole, Minnie Lockett, Reola Travis, and Willie May Lockett-Johnson, a sixth each.

Appellant contends that Ada Cole failed to prove that Tom Lockett and Ada's mother, Charlotta Webb, were married; hence it was not established that Ada was legitimate, and the presumption that she was Tom's daughter because of his access to Charlotta was not sustained. It is likewise contended that as to Minnie Lockett the evidence does not establish she was Tom's daughter, and a half-sister to Ada Cole. The belief that Minnie's claim is spurious rests upon testimony that her mother

was named Sarah, and that Sarah and Tas McNeill lived together. Tas died in 1915. Minnie is said to have been born in 1911. Tom married Sarah in 1918.

Another exception to the Court's finding of facts is that there is insufficient proof that Lillie Jones had recognized Walter Allen as a half brother, or had admitted any degree of relationship. For this reason, urges appellant, Luvenia Adams should be excluded.

There was testimony that Luvenia's paternal grandfather was Elijah Allen and her paternal grandmother was Marguerite Adams; also that Marguerite "afterwards" married Allen Lockett. Lillie Lockett was a daughter, and she married Scipio Jones. Appellant insists there is no proof of cohabitation between Elijah and Marguerite, nor was it shown by common acceptation and reputation that Elijah and Marguerite were man and wife. Marguerite was Lillie Lockett's mother, hence it was incumbent to show that Luvenia was Marguerite's granddaughter.

The brief in behalf of Luvenia Adams questions the *quantum* of proof required to overthrow factual findings of a Probate Court. *Campbell, Administrator,* v. *Hammond,* 203 Ark. 130, 156 S. W. 2d 75, discusses admissible testimony. It was there said that on appeal a Probate cause will be tried *de novo,* as are Chancery cases. The concurring opinion was in agreement on this point. That part of the opinion relating to admissibility of evidence is referred to in *Wilson* v. *Dodson, Administrator,* 203 Ark. 644, 158 S. W. 2d 46; *Gocio* v. *Seamster, Judge,* 203 Ark. 937, 160 S. W. 2d 194, and in *Farrell, Administrator,* v. *Holland,* 205 Ark. 523, 169 S. W. 2d 643.

*Gray* v. *Fulton,* 205 Ark. 675, 170 S. W. 2d 384, expressly holds that where an appeal from Probate Court "is supported by a preponderance of the evidence, as distinguished from substantial evidence, it will be affirmed if that is the only question".

We are frank to say that the evidential basis upon which some of the claims rest would be more satisfactory if marriage or divorce had been established by record

proof. This, however, is not imperative if circumstances make the procedure impracticable. Some of the witnesses told of conduct that occurred more than thirty-five years ago, and of acts upon which presumptions were based. Conversations touching upon relationships, duties discharged and obligations performed, interest in a child or children—care, solicitude, or the absence of these—such transactions were brought before the trial court. They come here with the *prima facie* verity that attaches to judgments and decrees.

It is fundamental that one who claims to be the heir of a decedent must, as a prerequisite to the right to participate in the estate, establish the relationship relied upon. *Holt* v. *Brackville et al.,* 158 Ark. 642, 250 S. W. 33. A presumption of marriage, however, may stem from cohabitation, accompanied by declarations of the parties and behavior consistent with the status alleged. *Martin* v. *Martin, ante,* p. 204, 205 S. W. 2d 189. In the cited case the inference relied upon was held insufficient because there was proof in contradiction that John Martin married Fannie Woods in 1895 and there was no divorce until 1902; hence, as the opinion says, John was under a legal disability that prevented marriage to Lena Watkins during the period of their cohabitation, and bigamy is not presumed.

We are not persuaded that a preponderance of the evidence does not support the judgment.

Affirmed.