Ross *v.* Edwards.

5-2023                                              333 S. W. 2d 487

Opinion delivered March 28, 1960.

*Jeptha H. Evans, Rose & Kizer, Douglas O. Smith, Jr., Warner, Warner & Ragon,* for appellant.

*Pettus A. Kincannon, Lawrence S. Morgan,* for appellee.

Ed. F. McFaddin, Associate Justice. The validity of the will of Mrs. Mattie Edwards is the question for decision. The appellee, Ross Edwards (surviving son of Mrs. Mattie Edwards), obtained probate of the will; within six months thereafter the appellants (two daughters of a deceased son of Mrs. Mattie Edwards) attacked the instrument as a forgery; the Probate Court found the will to be valid; and this appeal ensued, in which the appellants present two points:

I. The finding of the Probate Court was wholly contrary to the preponderance of the evidence.

II. The conduct of the Lower Court and its findings of fact constitute an abuse of discretion highly prejudicial to contestants herein.

Mrs. Mattie Edwards died on January 21, 1957 at the age of 87. She had been a widow for a number of years, and had only three sons:

1. James Edwards, who died in 1919, survived by two daughters who are appellants herein, Mrs. Marjorie Edwards Ross and Mrs. Claudine Edwards Lynch.

2. Keith Edwards, who died in 1944 without issue.

3. Ross Edwards, the appellee herein.

On June 24, 1957 appellee petitioned for the probate of the will[1] of Mrs. Mattie Edwards. Both of the at-

[1] This instrument, in its entirety, reads:
"Will of Mattie Edwards—Booneville, Arkansas.
"KNOW ALL MEN BY THESE PRESENTS —
"That I, Mattie Edwards, of Booneville, Arkansas, being of sound mind and disposing memory do make and publish this my last Will and Testament revoking all former wills by me at any time made.
"I. I hereby direct and constitute and appoint my beloved son, Ross Edwards, Booneville, Arkansas, sole Executor of this my last Will and Testament without being required to give or make bond or inventory and request that he keep my estate out of the Courts excepting for the probation of this Will.
"II. I direct my Executor collect all insurance, notes, money or any choses in action due me—that he pay all my just debts, doctors bill and funeral expense and place a suitable but not expensive marker at my grave at a convenient time.
"III. I give, bequeath and devise to my son, Ross Edwards, my entire Estate, both personal and real—all my choses in action, moneys, insurance, bank account, notes and every article that I die seized with and of excepting as hereinafter set out and mentioned:
"I give and bequeath to my granddaughter, Marjorie Edwards Ross, $100.00 in cash.
"I give and bequeath to my granddaughter, Claudine Edwards Lynch, $100.00 in cash.
"I give and bequeath to my beloved sister, Laura Keith McInturf, $500.00 in cash should she survive me but this bequest shall be void should she precede me.
"My granddaughters hereinabove will understand my love for them inasmuch as a prior settlement was heretofore consummated with them following the death of my beloved son, James Edwards, their father.
"IV. In the event my son, Ross Edwards, precedes me and/or I should become incapacitated, then his son, James Ross Edwards, in that event shall ascend to the executorship of this my Last Will and Testament with like direction imposed upon Ross Edwards herein.
"V. I direct my Executor to comply with my wishes as herein set out just as soon as he can conveniently do so following my demise. Signed, published and declared by the said Mattie Edwards as and for her last Will and Testament in the presence of each other at her request and we hereto subscribed our names after she has signed this Will immediately hereunder.
/s/ Mattie Edwards
"We, Chas. X. Williams and Long John Williams, do hereby certify that Mattie Edwards, the Testator in the above and foregoing last Will and Testament signed the same in our presence.
/s/ Long John Williams
/s/ Chas. X. Williams"

testing witnesses to Mrs. Edwards' purported will were dead at the time the will was offered for probate: Chas. X. Williams having died in 1951, and Long John Williams having died on April 10, 1957. Because of the death of both of the attesting witnesses, the probate of the will was accomplished by proof of three witnesses, each of whom stated under oath personal knowledge of each of the three signatures on the alleged will, and also stated that each of the said signatures (*i.e.*, the testatrix and the two attesting witnesses) was valid. § 62-2117 Ark. Stats. These three affiants were Abe Williams, Elizabeth Walker, and R. A. Sadler.

The will was admitted to probate and letters testamentary were issued to Ross Edwards on July 15, 1957. Due notice of probate was given; and on December 27, 1957 the appellants, Marjorie Edwards Ross and Claudine Edwards Lynch, being the two granddaughters mentioned in the will, filed their contest of the will. § 62-2115 Ark. Stats. The ground for contest now relied on[2] is, that the purported will was a forgery. The trial before the Chancellor on exchange extended over several days. The case was as thoroughly tried as any will contest on forgery that we have ever studied. Since the testatrix and both attesting witnesses were dead, all the contestants had to do was to prove that *any one* of the three signatures (testatrix or either attesting witness) was a forgery, in order to defeat probate, since, in Arkansas, a valid will, other than holographic, must have two witnesses. § 60-403 Ark. Stats.

An enormous record of testimony and exhibits is before us; and because the appellants claim, in their second point, that the Trial Judge was impatient with their expert witness, we have carefully gone over every ex-

---

[2] The three grounds for contest, as stated in the original pleading and the amended objections to the probate of the will were: (1) That said purported will was not made and executed as required by law and is not the lawful will of said decedent. (2) That said decedent was without legal capacity to make said purported will and that the said will is void and without force or effect. (3) That said purported will was procured by fraud and undue influence and is therefore illegal and void. The second and third grounds were finally abandoned, and the forgery question raised in the first ground became the sole attack.

hibit and word of testimony in this trial *de novo*. Probate appeals receive such a trial here. *Walsh* v. *Fairhead*, 215 Ark. 218, 219 S. W. 2d 941; *Lockett* v. *Adams*, 212 Ark. 899, 208 S. W. 2d 428; and *Brown* v. *Emerson*, 205 Ark. 735, 170 S. W. 2d 1019. After a painstaking study of the record, we have concluded that the appellants have not sustained the burden of proving any signature on the will to have been a forgery. So we affirm the probate of the will. When Ross Edwards offered the will for probate he had the burden of proving the genuineness of the signatures; he made such proof; and the will was admitted to probate on July 15, 1957. When the appellants sought to contest the will within the 6-months period (§ 62-2114), they had the burden of sustaining the contest. *Leister* v. *Chitwood*, 216 Ark. 418, 225 S. W. 2d 936; and *Walsh* v. *Fairchild, supra*.

Mrs. Mattie Edwards was a remarkable woman: left a widow when her three sons were young, she managed her property most efficiently, and was president for many years of the Citizens Bank in Booneville. Mr. Chas. X. Williams was an officer of the bank, being its attorney, and also personal attorney for Mrs. Edwards. Long John Williams, son of Chas. X. Williams, was likewise engaged in the operation of the bank. These two gentlemen were the attesting witnesses of Mrs. Edwards' will, which was shown to have been executed in 1945. The contestants (appellants) called a distinguished handwriting expert of worldwide experience. He testified: that each of the three signatures was a forgery; that the paper on which the will was written was bonded between 1940 and 1945; that with age the paper fades to ashen gray or yellow; that in 1945 this paper would have been white and if ink had been placed on it in 1945 the paper would still be white under the ink; that the paper was faded under the ink, therefore, establishing that the ink was not placed on the paper in 1945; that the kind of ink used in the signatures of Long John Williams and Chas. X. Williams was not in manufacture until 1952, seven years after the alleged signatures; and that the signature, particularly of Chas. X.

Williams, bore clear evidence of tracing. This expert also made a study of the typewriter used in typing the will.

There were introduced into evidence scores and scores of admittedly genuine signatures of Mrs. Edwards and the two attesting witnesses. Records, documents, and instruments were put in evidence containing signatures of all three parties, dating from the 1930's to the 1940's. Many of these signatures were "blown up", or enlarged by photographic processes; and a letter by letter comparison of the signature of each person on the will was checked against admittedly genuine signatures. All this testimony was designed to show that appellant, Ross Edwards, or someone for him, was responsible for the claimed forgery of Mrs. Edwards' will.

For the appellee there were two nationally known handwriting experts, each testifying to the genuineness of each of the three signatures on the questioned will; and their expert opinions were based on equally as many comparisons as those of the expert for the appellants. Also, there were friends and business associates who knew all three parties and their signatures (i.e., Mrs. Edwards and the two witnesses); and these friends and associates all testified that each signature was genuine. The expert witnesses for the appellee testified in great detail, just as did the expert witness for the appellants. In fact, all of the experts had a "field day", and showed great study in their chosen professions. The record is voluminous and the exhibits number into the scores. On the genuineness versus the forgery of the questioned will there was no real dispute as to the applicable rules of law: the issue was one of fact.

As aforesaid, we have reviewed *de novo* the entire record; and we conclude that the appellants have not established, with the *quantum* of necessary evidence, that the questioned will was a forgery.

Affirmed.