LEWIS *v.* SMITH.

4-5522                                129 S. W. 2d 229

Opinion delivered April 24, 1939.

*C. B. Crumpler,* for appellant.

*Robert C. Knox,* for appellee.

*James D. Head* and *O. E. and Earl N. Williams,* amici curiae.

GRIFFIN SMITH, C. J. We hold that county clerks, as ex-officio clerks of the probate court, continue as such under Constitutional Amendment 24, until otherwise provided by the General Assembly.

Roy H. Lewis and L. B. Smith are, respectively, county clerk and circuit clerk of Union county. To Smith's petition for mandamus to compel Lewis to surrender all books, papers, records, and documents pertaining to the probate court, Lewis demurred. The

demurrer was overruled. There was an order directing the county clerk to deliver the probate records to the circuit clerk. This was error.

To determine the relative status of the two officials, it is necessary to consider the amendment in its relation to act 3 of the Fifty-Second General Assembly (1939). Because neither the act nor the amendment appears in permanent form for distribution, essential parts are being copied at length.

Section 1 of Amendment 24 amends § 34 of art. 7 of the Constitution of 1874, and makes it read:

"In each county the judge of the court having jurisdiction in matters of equity shall be judge of the court of probate, and have such exclusive original jurisdiction in matters relative to the probate of wills, the estates of deceased persons, executors, administrators, guardians, and persons of unsound mind and their estates, as is now vested in courts of probate, or may be hereafter prescribed by law. The judge of the probate court shall try all issues of law and of facts arising in causes or proceedings within the jurisdiction of said court, and therein pending. The regular terms of the courts of probate shall be held at such times as is now or may hereafter be prescribed by law; and the General Assembly may provide for the consolidation of chancery and probate courts."

Section 2 relates to appeals, and is: "Appeals may be taken from judgments and orders of courts of probate to the supreme court; and until otherwise provided by the General Assembly, shall be taken in the same manner as appeals from courts of chancery and subject to the same regulations and restrictions."

Section 3 amends § 19 of Art. 7 of the Constitution so that it will read:

"The clerks of the circuit courts shall be elected by the qualified electors of the several counties for the term of two years, and shall be ex-officio clerks of the county and probate courts and recorder; provided, that in any county having a population exceeding fifteen thousand

inhabitants, as shown by the last federal census, there shall be elected a county clerk, in like manner as the clerk of the circuit court, and in such case the county clerk shall be ex-officio clerk of the probate court of such county until otherwise provided by the General Assembly.''

Clearly § 1 of the amendment authorizes the General Assembly to consolidate chancery and probate courts. The question arises, Has such authority been exercised?

Sections 1 and 2 of act 3 of 1939 are to be considered. They are:

''Section 1. The jurisdiction of the probate court is consolidated with and vested in the chancery court in each and all of the respective counties of this state, and said chancery court shall have original jurisdiction in all matters of probate.

''Section 2. The terms of the various probate courts of this state, as now provided by law, are hereby abolished, and hereafter the terms of the probate court shall be the same as now provided by law for the various chancery courts of the state. The various chancery courts of the state shall be open at all times, and may be in session in two or more counties or two or more courts on the same day, and the chancellor of any circuit may hear and determine all probate matters, in any county in which he may be sitting, for any county in his circuit; and in the event of the disqualification or inability of any chancellor to open court on the first day of the term in any county in his circuit, the bar of said court may elect a special chancellor to hear and determine matters in chancery and probate on the first day of said term; provided, the disqualification or inability of said chancellor to be present and open court shall be certified to the clerk of the court on or before the first day of said term.''

Section 3 provides that the reporters of the various chancery courts ''as now provided by law, shall be the reporters in all matters of probate.''

The amendment did not, *ipso facto,* consolidate chancery and probate courts. By § 1 it is provided that the *judge* of the court having jurisdiction in matters of

equity shall be *judge of the court of probate,* and . . . "the *General Assembly* may provide for the consolidation of chancery and probate courts." Section 2 directs that until otherwise provided by the General Assembly . . . "[appeals] shall be taken in the same manner as appeals from courts of chancery . . ."

Section 3 readopts the provisions of § 19 of Art. 7 of the Constitution of 1874 with respect to the election of county clerks and circuit clerks, and instructs that until otherwise provided by the General Assembly the county clerk shall, in all counties having a population of more than 15,000, be . . . "ex-officio clerk *of the probate court of such county.*"

The intention, then, can be no other than to perpetuate the probate courts until their consolidation with courts of chancery has been effectuated by the General Assembly. In its unamended form, § 34 of Art. 7 of the Constitution provided that "The judge of the county court shall be the judge of the probate court . . ." It has never been supposed that because the judge of the county court was made judge of the probate court, the courts were a unity. An interesting comment on the jurisdiction of probate courts is found in *Reinhart, Administrator v. Gartrell,* 33 Ark. 727.[1]

Unless the amendment contemplated continued existence of probate courts, why did it direct that as to counties having a population of more than 15,000 . . .

---

[1] In the Reinhart-Gartrell Case the court said: "Courts of probate, during their existence in this state, have ever had and still have exclusive original jurisdiction in the matter of the administration of the estates of decedents. This was statutory until the abolition of these courts, by act of April 17, 1873. By an act approved April 16, 1873, this *'elusive original jurisdiction,* in all matters pertaining to probate and of administration,' was transferred to the circuit court. The experiment was not satisfactory, and by the Constitution of 1874, the probate court was re-established. It was provided (Art. 7, § 34), that they should have *'such* exclusive original jurisdiction in matters relative to the probate of wills, the estates of deceased persons, executors, administrators, guardians, etc.,' . . . as is *now vested* in the circuit court, or may be hereafter prescribed by law. Obviously it was intended to relegate to the probate courts their old jurisdiction, without restriction or qualification."

"the county clerk shall be ex-officio clerk *of the probate court of such county* until otherwise provided by the General Assembly"? There is the further declaration in § 1 that . . . "the regular terms of the courts of probate shall be held at such times as is now or may be hereafter prescribed by law . . ." Here, again, there is recognition of the existence of the probate court; for there is a command that its terms coincide with terms of chancery.

Continued existence of probate courts is recognized in § 3 where it is said: "Appeals may be taken from judgments and orders of *courts of probate* to the supreme court."

The conclusion is inescapable that probate courts were not abolished; nor were they consolidated with chancery. If a purpose of the amendment was to consolidate the two courts, why did it provide for such consolidation at the instance of the General Assembly?

The next question relates to effect of act 3. Section 1, standing alone, might be regarded as consummation by the General Assembly of authority conferred by the amendment, although it will be noted that *jurisdiction* of the probate court is consolidated with that of chancery. Still, even in § 1, the term "in all matters of probate" is used.

Whatever doubt may be cast upon the purpose of act 3 by the manner in which § 1 is worded, § 2 leaves no room for conjecture. It abolishes *terms* "of the various probate courts," and enacts that *"hereafter the terms of the probate courts* shall be the same as now provided by law for the various chancery courts of the state." Again, in the same section, there is direction with respect to a special judge, etc., the provision being that . . . "the bar of said court may elect a special chancellor to hear and determine matters in chancery and probate."

The act does not consolidate the two courts in the sense that courts of probate have lost their identity. They remain, as an eminent friend of the court has expressed it in his brief, "probate courts in chancery."

Authority conferred upon the General Assembly by Amendment No. 24 to "otherwise provide" with respect to clerks has not been exercised.

The judgment is reversed, with directions that the demurrer be sustained.