**Bulah (Oliver) HARLEY, Individually, and Bobby Allen Oliver, a minor, by Bulah (Oliver) Harley, his guardian, custodial parent and next friend, Plaintiffs,**

v.

**Thomas Edward OLIVER et al., Defendants.**

**No. FS–72–22–C.**

United States District Court, W. D. Arkansas, Fort Smith Division.

Oct. 29, 1975.

Willard Crane Smith, Jr., Ft. Smith, Ark., Kenneth S. Jacobs, Villa Park, Ill., Billy E. Moore, Columbus, Ga., George H. Hartman, New York City, Thomas B. Taylor, Jr., Conroe, Tex., for plaintiffs.

Robert T. Dawson, J. H. Evans, Ft. Smith, Ark., for defendants.

### OPINION

JOHN E. MILLER, Senior District Judge.

Plaintiffs' complaint was filed February 15, 1975, in which they prayed:

"(a) For a temporary Writ of Injunction to restrain the defendants, Thomas Edward Oliver, Van B. Taylor, Judge, and Jeptha A. Evans, and each of them jointly and severally from furtherance of the acts hereinabove complained of and mandating their restoration of Bobby Allen Oliver to the custody and medical care and supervision of his mother, Bulah (Oliver) Harley;

"(b) That upon full and final hearing, said Writ of Injunction be made permanent;

"(c) For actual and compensatory damages in the sum of One Million and No/100ths ($1,000,000.00) dollars;

"(d) For punitive damages in the amount of Five Million and No/100ths ($5,000,000.00) dollars."

Hearing on the motion of plaintiffs was held February 19, 1975. Plaintiffs appeared in person and by attorneys, Willard Crane Smith, Jr., of Fort Smith, Arkansas, Kenneth S. Jacobs, Villa Park, Illinois, Billy E. Moore, Columbus, Georgia, and George H. Hartman, New York, N. Y. Defendants appeared by Robert T. Dawson, Bradley D. Jesson, and J. H. Evans, all of Fort Smith, Arkansas. On February 20, 1975, the court entered an order in which it stated:

"Upon a consideration of all the evidence that was introduced and the pleadings before this court, the court was and is of the opinion that a temporary injunction should not be granted and that the parties should appear before the Probate Court for further consideration by that court as to any provision relative to the selection of a physician to perform a proposed operation upon the ward, Bobby Allen Oliver, before proceeding to a trial upon the merits; that further hearing upon the complaint of plaintiffs should be postponed; and the hearing on the complaint be continued until the further orders of the court.

"IT IS THEREFORE ORDERED AND ADJUDGED that the motion and prayer of plaintiffs for issuance of a temporary injunction is denied, and the case is continued for hearing upon the allegations of the complaint."

Notice of appeal was filed by plaintiffs on the same day the order was entered.

On September 24, 1975, the Court of Appeals for the Eighth Circuit in a per

curiam opinion (not published) dismissed the appeal as moot. In its opinion the court said:

"On February 20, 1975, the federal district court denied the temporary injunction after a hearing, and ordered the parties to reappear before the State Probate Court for further 'consideration by that court as to any provision relative to the selection of a physician to perform a proposed operation' on the child. The same day, the State Probate Court entered a consent decree directing the parties to take the child to Carl Nelson, M. D., 'to undergo necessary surgery for removal of a cyst. . . .' Thereafter the plaintiff appealed the federal district court's denial of the temporary injunction. Defendants have moved to dismiss this appeal on the ground of mootness.

"It appears from the record that the child was returned to its mother and lawful guardian on February 19, 1975, the date of the hearing in the district court. There no longer exists any medical emergency. It is well settled when a court's order cannot provide any further relief to the parties, the case is moot. There is no showing here that the conduct complained of is likely to be repeated. Furthermore, it would be highly improper for us to assume that similar circumstances would develop again without adequate consideration by the State Probate Court.

"The appeal is ordered dismissed as moot."

The mandate dismissing the appeal was filed October 17, 1975.

The defendants were of the opinion that the appeal would not be perfected and proceeded to file motions to dismiss the complaint.

Because of the filing of the notice of appeal, the court delayed the consideration of the motions of defendants to dismiss.[1]

On March 21, 1975, defendant Van B. Taylor filed and duly served his motion to dismiss and brief in support thereof. On April 21, 1975, plaintiffs filed and duly served their brief in opposition to the motion. The movant is a Judge of the 14th Chancery Circuit of Arkansas. He lives at Dardanelle, the County seat of Yell County. The District comprises the Counties of Logan, Perry, Scott and Yell.

Under the law of Arkansas the Chancellor is also the Probate Judge in each county in his circuit, and operates independently. *Lewis v. Smith*, 198 Ark. 244, 129 S.W.2d 229; *Davie v. Smoot*, 202 Ark. 294, 150 S.W.2d 50; Constitutional Amendment 24.

Ark.Stat.Ann., § 57–604 (1971 Repl.), provides:

"The jurisdiction of the Probate Court over all matters of guardianship, other than guardianships ad litem in other courts, shall be exclusive, subject to the right of appeal."

On March 24, 1975, defendants Thomas Edward Oliver and Jeptha A. Evans filed and duly served their motion to dismiss and brief in support thereof. On April 25, 1975, Patrick J. Leston, one of the attorneys for plaintiffs, served brief in opposition to the motion.

Thomas Edward Oliver is a citizen and resident of Arkansas and resides in the City of Booneville, Logan County, Arkansas. He is the former husband of the plaintiff Bulah (Oliver) Harley and the father of Bobby Allen Oliver.

Jeptha A. Evans is a citizen and resident of Arkansas and resides in the City

---

1. Following the opinion of the Court of Appeals of September 24, the court contacted Willard Crane Smith, Jr., the local attorney for the plaintiffs, and asked him whether plaintiffs expected to take any further action in the case. He stated that he did not know but that he would contact the other attorneys and advise the court. On the next day, September 26, the court by letter addressed to the nonresident attorneys for plaintiffs requested that they advise the court "as soon as may reasonably be done, within a week or ten days, whether they desire any further action in the case." No reply of any kind has been received.

of Booneville where he is engaged in the practice of law.

On May 15, 1975, while the appeal was pending, the plaintiffs filed their motion for change of venue and for the disqualification of the present judge. On May 20, 1975, the court filed its opinion overruling and denying the motion, 400 F. Supp. 105.

### JURISDICTION

The Court of Appeals in its consideration of the plaintiffs' appeal said:

> "We need not pass on whether the district court had jurisdiction of the subject matter in view of our holding that the case is moot."

In paragraph 1 of the complaint the plaintiffs alleged that this is a suit "for a temporary writ of injunction, a permanent writ of injunction, and damages authorized by U.S.C. Title 42, Sec. 1983, to restrain and prevent and to provide redress for the deprivation under color of state law of the rights secured to the plaintiffs by the First, Fifth and Fourteenth Amendments to the Constitution of the United States."

In Section 3 of the complaint it is alleged that jurisdiction is conferred upon this court by 28 U.S.C.A., § 1343(3, 4) and 42 U.S.C.A, § 1988.

In *Williams v. Yellow Cab Co. of Pittsburg, Pa.* (3 Cir. 1952), 200 F.2d 302 at page 307, the court said:

> "The second basis upon which jurisdiction is claimed is Section 1343 of Title 28, United States Code, commonly known as the Civil Rights Act, the relevant portion of which is set out in a note. The Civil Rights Act was originally enacted to enforce the Fourteenth Amendment. It has long been settled that the Fourteenth Amendment is directed only to state action and that the invasion by individuals of the rights of other individuals is not within its purview. It necessarily follows that the jurisdiction conferred upon the federal district courts by Section 1343 is similarly

limited and that redress for the invasion by an individual of the civil rights of another must be sought in the state courts, unless, of course, diversity of citizenship is present."

See, also, *Love v. Chandler* (8 Cir. 1942), 124 F.2d 785; *United States v. Williams* (1951), 341 U.S. 70, 71 S.Ct. 581, 95 L.Ed. 758.

As to the contention that 42 U.S.C.A. § 1988 conferred jurisdiction, the court in *Moor v. County of Alameda* (1972), 411 U.S. 693, 93 S.Ct. 1785, 36 L.Ed.2d 596, said:

> "Section 1988, as is clear from its legislative history, does not independently create a federal cause of action for the violation of federal civil rights."

■ The Civil Rights Acts do not in themselves confer complete and full jurisdiction upon the district courts. In order to maintain a suit in the district courts under the Civil Rights Acts there must be alleged and proven an invasion by an individual of the civil rights of another as defined and provided by the various statutes claimed to have been violated.

All of the parties, plaintiffs and defendants, are now and were at time suit was commenced citizens of the United States and reside in the State of Arkansas.

[2] The court is of the opinion that it is without jurisdiction of the allegations contained in the complaint. In view of this conclusion it appears unnecessary to further consider the case or to act upon the motions of defendants to dismiss heretofore mentioned, and an order dismissing the case for lack of jurisdiction would ordinarily be entered. However, if it should be held on another appeal that the judgment of the Court of Appeals of September 24, 1975, did not dispose of the claims of plaintiffs for damages, it would be necessary to consider the motions of defendants to dismiss, along with other reasons for dismissal, and the court now proceeds to determine such matters.

**454**

## MOTIONS TO DISMISS

In paragraph 25 of the complaint the plaintiffs allege that the defendants "maliciously conspired to remove the minor from the custody and supervision of Bulah (Oliver) Harley and from the medical treatment to be scheduled for performance by Dr. Carl L. Nelson, Little Rock, Arkansas, for the purpose of treating the minor child by means of surgery with attendant blood transfusions which the conspiring parties knew violated the religious beliefs of the plaintiffs."

 The Probate Court of Logan County presided over by Judge Van B. Taylor had subject-matter jurisdiction over all matters pertaining to guardianship. Ark.Stat.Ann., § 57–604 (1971 Repl.). The law is well settled that the rule of judicial immunity from liability for determinations and acts in a judicial capacity may not be avoided by pleading that the acts complained of resulted from a conspiracy previously entered into. 46 Am.Jur.2d, Judges, § 80, p. 150; *Pierson v. Ray* (1967), 386 U.S. 547, 553–54, 87 S.Ct. 1213, 18 L.Ed.2d 288; *Hoope v. Klapperich* (1947), 224 Minn. 224, 28 N.W.2d 780, 173 A.L.R. 819; *Meyer v. Navelle* (E.D.Pa.1975), 389 F.Supp. 972; *Classic Distributors, Inc. v. Zimmerman* (M.D.Pa.1974), 387 F.Supp. 829.

In *Guedry v. Ford* (5 Cir. 1970), 431 F.2d 660, the court said:

"At common law, judges are protected from civil liability for judicial actions done under color of office if they have jurisdiction, even if the acts are done under authority of unconstitutional statutes. This immunity applies in actions for damages brought under Title 42 U.S.C. § 1983, as in this case.

"*Pierson v. Ray*, 386 U.S. 547, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967)

*Beard v. Stephens*, 372 F.2d 685 (5th CCA 1967)

*Franklin v. Meredith*, 386 F.2d 958 (10th CCA 1967)

*Carmack v. Gibson*, 363 F.2d 862 (5th CCA 1966)

"A prosecuting attorney when acting in his official capacity is protected by the same immunity in civil cases that is applicable to judges, provided that his acts are within the scope of his jurisdiction and by authorization of law.

"*Madison v. Purdy*, 410 F.2d 99 (5th CCA 1969)

*Carmack v. Gibson*, supra

*Lewis v. Brautigam*, 227 F.2d 124 (5th CCA 1955)

*Peek v. Mitchell*, 419 F.2d 575 (6th CCA 1970)

*Bauers v. Heisel*, 361 F.2d 581 (3rd CCA 1966), Cert. den. 386 U.S. 1021, 87 S.Ct. 1367, 18 L.Ed.2d 457 (1967)

*Friedman v. Younger*, 282 F.Supp. 710 (C.D.Cal.1968)

Cf. *Peterson v. Stanczak*, 48 F.R.D. 426 (N.D.Ill.1969)

"At no time did the defendants Ford and Dufreche act other than in their capacity as City Judge and Assistant District Attorney, respectively. Accordingly, both are entitled to the protection of judicial immunity that is afforded judicial officers acting in the scope of their jurisdiction.

"A private person cannot be held liable under Title 42 U.S.C. § 1983 unless his wrongful action was done under color of state law or state authority. Further, a private person alleged to have conspired with a state judge and prosecuting attorney who are entitled to immunity, cannot be held liable, since he is not conspiring with persons acting under color of law 'against whom [plaintiff] could state a valid claim' under 42 U.S.C. § 1983.

"*Haldane v. Chagnon*, 345 F.2d 601, 604 (9th CCA 1965)

*Shakespeare v. Wilson*, 40 F.R.D. 500, 505 (S.D.Cal.1966)

*Stambler v. Dillon*, 302 F.Supp. 1250 (S.D.N.Y.1969)

*Jemzura v. Belden,* 281 F.Supp. 200, 206 (N.D.N.Y.1968)

Cf. *Hall v. Garson* (5 CCA 1970) 430 F.2d 430, at 439 [1970]

"Assuming all the well pleaded facts in the complaint to be true and viewing the allegations of the complaint in the light most favorable to the plaintiff, it appears beyond doubt that he can prove no set of facts in support of his claim upon which relief can be granted. Plaintiff's allegations that a conspiracy existed between all the captioned defendants is conclusionary in nature and unsupported by any pleaded facts and hence insufficient to constitute a basis for relief.

"Accordingly, the court finds that there is no genuine issue of material fact and that the defendants are entitled to a judgment as a matter of law, dismissing the plaintiff's complaint against them."

■ There are two important areas, domestic relations cases and probate matters, where, by a judge-made exception to the statute, the federal courts will not act though diversity is present. The exceptions are rationally justified on the ground that these are two areas of the law in which the states have an especially strong interest and a well-developed competence for dealing with them. In other words, the federal courts refuse to hear child custody cases, in line with the sweeping statement of the Supreme Court that, "The whole subject to the domestic relations of husband and wife, parent and child, belongs to the laws of the state and not to the laws of the United States. *Ex parte Burrus,* 1890, 10 S.Ct. 850, 853, 136 U.S. 586, 593–94, 34 L.Ed. 500." Wright, Law of Federal Courts, 2d Ed., § 25, p. 83; *Bassler v. Arrowood* (8 Cir. 1974), 500 F.2d 138.

In *Magaziner v. Montemuro* (3 Cir. 1972), 468 F.2d 782 the court said:

"Tradionally, it has been the policy of federal courts to avoid assumption of jurisdiction in this species of litigation. 'The whole subject of the domestic relations of husband and wife, parent and child, belongs to the laws of the states and not to the laws of the United States.'

\* \* \* \* \* \*

" 'As a matter of policy and comity, [child support cases are] local problems [which] should be decided in state courts. Domestic relations is a field peculiarly suited to state regulation and control, and peculiarly unsuited to control by federal courts.' *Buechold v. Ortiz,* 401 F.2d 371, 373 (9th Cir. 1968)."

■ As to the motion of Thomas Edward Oliver and Jeptha A. Evans, the court is of the opinion that both are immune from liability. Certainly the only thing that Evans did was to represent Mr. Thomas Edward Oliver, and there is nothing to show that he, Oliver, the father of the boy, did anything to impose liability upon him. He was merely trying to see that his son received proper medical attention. *Rhodes v. Meyer* (D.Neb.1963), 225 F.Supp. 80, aff'd (8 Cir.), 334 F.2d 709; *Rhodes v. Van Steenberg* (D.Neb.1963), 225 F. Supp. 113; *Rhodes v. Houston* (D.Neb. 1962), 202 F.Supp. 624, aff'd by per curiam opinion (8 Cir.), 309 F.2d 959; *Timson v. Weiner* (S.D.Ohio 1975), 395 F.Supp. 1344; *Hazo v. Geltz* (W.D.Pa. 1975), 395 F.Supp. 1331; *Smith v. Petersen* (8 Cir. 1975), 521 F.2d 1404; *Dear v. Rathje* (N.D.Ill.1975), 391 F. Supp. 1; *State of Louisiana v. Ciolino* (E.D.La.1975), 393 F.Supp. 102.

In *Watts v. McGowan* (3 Cir. 1975), 516 F.2d 203, at page 205, the court said:

"In *Hill v. McClellan,* 490 F.2d 859, 860 (5th Cir. 1974), the court pointed out that 'a private person alleged to have conspired with a state judge and attorney who are entitled to immunity cannot be held liable, since he is not conspiring with persons acting under color of law against whom a valid claim could be stated. [Citing cases.]' See also *French v. Corrigan,* 432

F.2d 1211, 1214 (7th Cir. 1970); *McIntosh v. Garofalo*, 367 F.Supp. 501, 504–05 (W.D.Pa.1973)."

None of the defendants acted "under color of any statute" or deprived plaintiffs "of any rights, privileges, or immunities secured by the constitution and laws."

There are many other reasons why plaintiffs cannot recover damages from any of the defendants. They alleged in section 13 of the complaint that they "are of the religious faith of Jehovah's Witnesses and are opposed to the administration of blood transfusions on both religious and medical grounds."

█ A parent or guardian of a minor has no legal right to deny proper medical treatment or treatment recommended by the medical profession for any disease of a minor, even though such treatment is contrary to a religious belief of the parent or guardian. *Jehovah's Witnesses in State of Washington v. King County Hospital No. 1* (N.D.Wash. 1967), 278 F.Supp. 488; *Winters v. Miller, M. D.* (E.D.N.Y.1969), 306 F.Supp. 1158; *In re Application of President and Directors of Georgetown College, Inc.*, (1964) 118 U.S.App.D.C. 80, 331 F.2d 1000.

The *Jehovah's Witnesses* case, 278 F.Supp. 488, was affirmed by the Supreme Court of the United States in 1968, 390 U.S. 598, 88 S.Ct. 1260, 20 L.Ed.2d 158; see, also, *Prince v. Massachusetts*, 321 U.S. 158, 64 S.Ct. 438, 88 L.Ed. 645.

In *Cude v. State* (1964), 237 Ark. 927, at pages 932–933, 377 S.W.2d 816 at page 819, the court said:

"The U. S. Supreme Court said in *Prince v. Commonwealth of Massachusetts*, 321 U.S. 158, 64 S.Ct. 438, 88 L.Ed. 645: 'The right to practice religion freely does not include liberty to expose the community or the child to communicable disease or the latter to ill health or death. * * * Parents may be free to become martyrs themselves. But it does not follow they are free, in identical circumstances to make martyrs of their children before they have reached the age of full and legal discretion when they can make that choice for themselves.'

* * * * * *

"In cases too numerous to mention, it has been held, in effect, that a person's right to exhibit religious freedom ceases where it overlaps and transgresses the rights of others. We cite a few cases upholding the validity of statutes requiring vaccination, and affirming orders of courts authorizing blood transfusions, etc. *In Re Whitmore*, Dom.Rel.Ct., 47 N.Y.S.2d 143; vaccination of school child. *Sadlock v. Board of Education*, 137 N.J.L. 85, 58 A.2d 218; vaccination of school child. *State v. Perricone*, 37 N.J. 463, 181 A.2d 751; giving blood transfusion to infant. *City of New Braunfels v. Waldschmidt*, 109 Tex. 302, 207 S.W. 303; vaccination of school child. *Mosier v. Barren County Board of Health*, 308 Ky. 829, 215 S.W.2d 967; vaccination of school child; *Board of Education of Mountain Lakes v. Maas*, 56 N.J.Super. 245, 152 A.2d 394; vaccination of school child. *In Re Clark*, Ohio Com.Pl., 185 N.E.2d 128; blood transfusion for three year old child."

The courts have drawn distinction between the free exercise of religious belief which is constitutionally protected against any infringement and religious practices that are inimical or detrimental to public health or welfare.

In the case of *In re Sampson*, 65 Misc.2d 658, 317 N.Y.S.2d 641 (1970), the question involved herein was fully discussed. Beginning on page 651 the court said:

"To a layman unversed in the seemingly esoteric art of theological interpretation of the 17th century English version of ancient Hebrew and Greek Scriptures, these passages are, to say the least, somewhat obscure. They have to do with blood and the eating or taking thereof. Blood transfusion as administered by modern medicine

was unknown to the authors of these cryptic dicta. Had its beneficient effects been known to them, it is not unlikely some exception would have been made in its favor—especially by St. Luke who is said to have been a physician.

" 'But in our humble Civil Court we must confine ourselves to the civil law of the State. Religious doctrines and dogmas, be they obviously sound or curiously dubious, may not control. The parents in this case have a perfect right to worship as they please and believe what they please. They enjoy complete freedom of religion. The parents also have the right to use all lawful means to vindicate this right * * *.

" 'But this right of theirs ends where somebody else's right begins. Their child is a human being in his own right, with a soul and body of his own. He has rights of his own —*the right to live and grow up without disfigurement* (emphasis supplied).

" 'The child is a citizen of the State. While he "belongs" to his parents, he belongs also to his State. Their rights in him entail many duties. Likewise the fact the child beongs to the State imposes upon the State many duties. Chief among them is the duty to protect *his right to live and to grow up with a sound mind in a sound body,* and to brook no interference with that right by any person or organization (emphasis supplied).

" 'When a religious doctrine espoused by the parents threatens to defeat or curtail such a right of their child, the State's duty to step in and preserve the child's right is immediately operative.

" 'To put it another way, when a child's right to live and his parents' religious belief collide, the former is paramount, and the religious doctrine must give way.' "

## CONCLUSION

Under the allegations of plaintiffs' complaint, the facts disclosed by the record and the order of the United States Court of Appeals for the Eighth Circuit of September 24, 1975, the plaintiffs are not entitled to an injunction or to recover of and from the defendants on any one of the damages and judgment is being entered today, sustaining each of the motions of defendants and dismissing the complaint and adjudging all costs against plaintiffs.