532 F.Supp. 284 (1981)
WESTBOROUGH MALL, INC., a Corporation, George Staples, Jr., and Westborough Mall Associates, a Missouri Limited Partnership, by and through George Staples, Jr., its sole general partner, Plaintiffs,
v.
CITY OF CAPE GIRARDEAU, MISSOURI, a Municipal Corporation, Paul W. Stehr, Robert K. Herbst, Howard C. Tooke, Samuel L. Gill, Gail L. Woodfin, W. G. Lawley, Charles L. Drury, Drury Industries, Inc., a Corporation, May Department Stores Co., a Corporation, West Park Associates, a Missouri Limited Partnership, May Centers of Cape, Inc., a Corporation, and May Centers, Inc., a Corporation, Defendants.
No. S80-105C.
United States District Court, E. D. Missouri, Southeastern Division.
October 27, 1981.
Judgment Made Final By Nunc Pro Tunc Order November 10, 1981.
*285 James R. Robison, Sikeston, Mo., Robert E. Manley, Andrew S. Lipton, Cincinnati, Ohio, Robert H. Freilich, Martin L. Leitner, Kansas City, Mo., for plaintiffs.
Stephen E. Strom, Bradshaw Smith, Cape Girardeau, Mo., Thomas C. Walsh, St. Louis, Mo., for defendants.

MEMORANDUM AND ORDER
WANGELIN, District Judge.
This matter is before the Court upon the motions of Charles L. Drury, Drury Industries, Inc. (Drury defendants), the May Department Stores Company, the May Centers, Inc., the May Centers of Cape, Inc. (May defendants), Paul W. Stehr, Robert Herbst, Howard C. Tooke, Samuel L. Gill, Gail L. Woodfin, W. G. Lawley, the City of Cape Girardeau, Missouri, and West Park Associates, for summary judgment on each count of plaintiffs' seven count complaint which includes alleged violations of 42 U.S.C. § 1983 (Count 1), a conspiracy to violate plaintiffs' constitutional rights as made actionable under the same statute (Count 2), a violation of the Sherman Act, 15 U.S.C. § 1 (Count 3), a violation of 15 U.S.C. § 2 for a conspiracy to monopolize (Count 4), an alleged conspiracy to interfere with plaintiffs' valid business relationships (Count 5), a Sherman Act count against five members of the Cape Girardeau City Council (Count 6) and the prayer for declaratory judgment and injunctive relief, to-wit: the striking down of two ordinances of the Cape Girardeau City Council (Count 7) pursuant *286 to Rule 56 of the Federal Rules of Civil Procedure.
The cause of events which gave rise to this suit surrounded the failure of one group of developers and the success of another group in their efforts to build a regional shopping center in Cape Girardeau, Missouri. Plaintiff, Westborough Mall, Inc., is a Missouri corporation which in 1973 leased approximately sixty seven (67) acres of land in Cape Girardeau, Missouri, at Bloomfield Road and Missouri Highway 61 (Kingshighway). George Staples, Jr., a principal of Westborough Mall Associates, a Missouri limited partnership, was the prime mover and organizer of the Westborough Mall project which involved the building and managing of a major retail shopping center on the above mentioned site. Staples made several attempts to secure "anchor" tenants for the Mall project  major department stores which would enhance the attractiveness of the project to other tenants and retail customers. In June of 1974, Westborough Mall, Inc. was granted C-4 zoning by the City of Cape Girardeau which provided for the construction of an enclosed integrated shopping mall containing three major department store tenants, as well as other small specialty shop tenants. Staples continued to solicit a supporting commitment from major department stores but was unsuccessful and shelved his development plans for approximately two years. In 1976, Staples formed a limited partnership which raised $800,000 contributed by various local limited partners in a further effort to salvage the project.
By mid-1977 Staples arranged for site preparation including grading work to be done by the Penzel Construction Company of Jackson, Missouri. Due to unforeseen and substantial rock formations on the property, the grading project proved to be considerably more difficult and expensive than had been originally contemplated. By late 1978 the Penzel Construction Company was claiming approximately $300,000 owed by Staples which had not been paid. Soon after the receipt of the first unpaid bills Staples removed his wife, son and daughter as general partners of the limited partnership. Penzel asserted mechanic's liens against the Westborough Mall property and filed suit against Westborough Mall Associates in May, 1979 seeking to collect more than $312,000. This group also was indebted to the Bank of New Madrid, Missouri in the sum of Two Hundred Eighty Six Thousand Dollars ($286,000). At this time the partnership had no liquid assets and no letters of commitment from any major tenants.
In June, 1978, Staples had agreed with Penzel Construction Company that the Company was to construct a shell building on the site. This contract contained a forfeiture clause which provided that if financing for the mall had not been arranged by May 1, 1979 Westborough Mall Associates was to forfeit $5,000 to Penzel. As of that date no commitment had been obtained for financing and the grading bill had not been paid. Penzel, a limited partner in Staples' Westborough Mall Associates, had to institute a suit against the partnership and Staples in state court in an attempt to collect the $5,000 penalty and the unpaid grading bill. Such bill has not been paid to date. In fact, no substantial, successful preparations had been made at that time, and no building plans have ever been prepared for any structure at the Westborough Mall site. In sum, by mid-1979, Westborough Mall had no liquid assets, no major department store tenants, no building plans, no commitments for financing, and had past numerous projected target dates promised by Staples throughout the years. In 1979, Westborough Mall was no closer to viability than it was in 1973.
The City Manager of Cape Girardeau, Missouri, defendant W. G. Lawley, was referred to in an article in the April 18, 1979 issue of the Southeast Missourian  a local daily newspaper  as questioning the validity of Westborough's C-4 zoning due to a requirement in the Cape Girardeau zoning code which provided that construction had to commence within three years of the grant of C-4 zoning or the zoning would lapse. Lawley later ordered the zoning maps of the City changed so as to reflect *287 that C-4 zoning for Westborough Mall had lapsed and instructed the City Engineer of Cape Girardeau not to issue building permits for the Westborough site. There exists no evidence at this time before this Court which would indicate that any of the moving defendants knew anything of Lawley's opinion or his acts prior to the time they were reported in the newspaper, or in any way prompted him to act as he did. In fact, Lawley was unaware that the C-4 zoning given to the Westborough Mall site contained an exemption to this three year requirement, and consequently the Westborough group actually enjoyed C-4 zoning throughout this time frame.
Staples argues that this action by Lawley had a substantial chilling effect on the prospect of the Westborough Mall project attaining major tenants and financing. Nevertheless, Staples continued to reassure his partners and armed with his own belief that Westborough Mall's C-4 zoning remained in effect and his attorney's opinion to that effect, he professed an intention to proceed with the project as if Lawley had never made his statements. Staples never petitioned or in any way approached the City for a clarification or reaffirmation of his C-4 zoning. On May 14, 1979 Westborough Mall, Inc. agreed to sell the leasehold interest it held in the site, yet no sale has ever been effected.
The Mall eventually built in the City of Cape Girardeau, the West Park Mall, is located at Route K and Mount Auburn Road. The site was owned by Drury Industries which in late 1978 entered into a partnership agreement with the May Centers of Cape, Inc. At the time of the execution of this agreement there existed no arrangement whereby May Department Store or Famous Barr, major retail department stores, would be located in the shopping center. Famous Barr although had expressed some interest in entering the Cape Girardeau market but as early as 1976 had decided not to open a store there.
The City Attorney of Cape Girardeau had assured Drury that a shopping center could actually be constructed on C-2 zoning and Drury requested the City to rezone to C-2 those portions of the site which were not already so zoned. When the application for C-2 zoning was submitted, the finalized layout of the shopping center had not been sufficiently completed in order to file an application for C-4 zoning. The developers told the City that C-4 zoning would be requested as soon the plans had become sufficiently finalized.
Pursuant to governing ordinances, a public hearing was held before the Planning and Zoning Commission of Cape Girardeau concerning this C-2 application. This request was vehemently opposed by Staples and his business associates, but the Planning and Zoning Commission recommended the approval of the application. Further, public hearings were held before the City Council in accordance with the applicable regulations, and the Council on April 4, 1979 approved the C-2 zoning. A few months later the developers prepared and filed an application for C-4 zoning, and again after extensive public hearings before both the Planning and Zoning Commission and the City Council, the Council voted to grant C-4 zoning to the West Park Mall site. The West Park Mall is now largely a reality with two major anchor tenants and the vast majority of its rentable space being occupied.
Counts 1 and 2 of the amended complaint state a claim for damages and attorney's fees under 42 U.S.C. § 1983. Count 1 refers only to the City officials and Count 2 to all of the defendants. Count 2 is an allegation that all of the defendants acted pursuant to an agreement and conspiracy under "color of state law to deprive plaintiffs of their rights...secured to them by the Fourteenth Amendment of the United States Constitution." The deprivation of plaintiffs' rights secured by the due process and equal protection clauses in the Constitution resulted from the active subversion of the development of Westborough Mall while developing the West Park Mall. The acts which constituted this deprivation where the statements of Lawley concerning the lapse of the C-4 zoning of Westborough *288 Mall and the securing of the City Council's ordinances 1437(C-2) and 1469(C-4) permitting the development of West Park Mall.
The City Manager's statement of his own opinion concerning the lapse of Westborough Mall zoning, in this Court's view, had no detrimental effect on Westborough Mall's development in light of the Mall's prior history and potential by April, 1979. The City had taken no official action with regard to Westborough Mall zoning. Staples assured all his business associates that this was merely an individual's opinion and that no City Council member had unequivocably stated that Westborough Mall zoning had in fact lapsed. Furthermore, upon reviewing all the evidence submitted to this Court upon this motion, it is clear that there is no indication that any of the private defendants knew of or in any way solicited Lawley's opinion concerning the lapse of Westborough Mall's zoning. Plaintiffs' inability to execute the development of Westborough Mall can most certainly be traced to their inability to attract major financial backing or raise the interest of even one major anchor tenant. Westborough Mall's own financial agent, Charles Green, testified that more than Sixteen Million Dollars ($16,000,000) would be necessary to build the Mall, and that the group had never so much as filed a loan application due to its inability to attract major tenants. By April, 1979 Westborough Mall owed Penzel Construction Company over $300,000. Carl Penzel testified that his company refused to build any structures until the grading bill was paid. Also Westborough Mall had no construction contracts let by April, 1979, nor had building plans been drawn up, and no evidence indicates that Staples and his group had in its employ anyone capable of doing so. It is therefore clear to this Court that the Westborough Mall was in the severe administrative and financial difficulty which assured its demise long before the difficulties arose which allegedly were experienced due to the acts of the defendants.
After extensive discovery in this cause including the depositions of Lawley, the City Engineer, and all the Councilmen defendants, plaintiffs have been unable to unearth a shred of evidence linking an improper act of the City defendants to the private developers' efforts to build West Park Mall. Also no evidence of a link between the acts of either group to damages suffered by plaintiffs has been established.
The allegation that the May and Drury defendants deprived plaintiffs of due process and equal protection rights by obtaining C-4 commercial zoning for West Park Mall meets its demise when viewed in light of the decision of the Eighth Circuit Court of Appeals in Gorman Towers, Inc. v. Bogoslavsky, 626 F.2d 607 (8th Cir. 1980). Gorman Towers dealt with a suit against various public officials, landowners and a landowner's attorney all of whom allegedly conspired to rezone a portion of real estate from multiple to single family dwellings thereby depriving the developers of equal protection under the Fourteenth Amendment. The Eighth Circuit held in part that the private citizens and their attorney who sought the change in zoning were absolutely privileged by the First Amendment in their successful attempts to persuade the city officials of Fort Smith, Arkansas to downzone the property involved and thereby effectively kill a proposed apartment complex. The active opponents of the housing project pressed upon the Eighth Circuit a theory of derivative immunity protecting the individual defendants  that immunity derived from the absolute immunity enjoyed by the city officials, see Harley v. Oliver, 404 F.Supp. 450, 454 (W.D.Ark.1975), aff'd on other grounds, 539 F.2d 1143, 1145-46 (8th Cir. 1976), and also on a general grounds of insufficiency of the pleadings, but the Court failed to reach these issues "... for we adopt the district court's holding that the private citizens and their lawyer were absolutely privileged by the First Amendment to petition for the zoning amendment that caused plaintiff's damages." Gorman Towers at 614. The City and the Councilmen defendants enjoy an absolute federal common law immunity from suit under 42 U.S.C. § 1983 for the *289 Eighth Circuit in Gorman Towers held the absolute immunity enjoyed by state and regional legislators under Lake Country Estates, Inc. v. Tahoe Regional Planning Agency, 440 U.S. 391, 99 S.Ct. 1171, 59 L.Ed.2d 401 (1979) extended to local legislators. Gorman Towers at 612, 613.
Plaintiffs' claim of deprivation of equal protection flies in the face of the facts surrounding the consideration by the Cape Girardeau City Council and the Cape Girardeau Planning and Zoning Commission of Ordinances 1437 and 1469 (C-2 and C-4 zoning for West Park Mall) in that the Westborough Mall developers had every opportunity to oppose West Park Mall's petitions for rezoning and indeed exercised every such opportunity with vigor. After the Westborough group exhausted the legitimate political means by which they could contest the rezoning, and all concerned parties were heard, the City Council voted to grant West Park Mall the same competitive opportunity which Westborough had enjoyed for many years, that is C-4 zoning. Any causal link between the failure of the Westborough Mall project and the West Park Mall rezoning is simply nonexistent. The Westborough group had better than six years to secure financing, attract major tenants and provide for the construction of their project prior to the West Park rezoning, but none of these essential elements of the success of a modern shopping mall had been secured. It is therefore proper that summary judgment be granted on Count 2 of plaintiffs' complaint.
Plaintiffs have further alleged that these private defendants have conspired to restrain trade in violation of § 1 of the Sherman Act, 15 U.S.C. § 1 in Count 3; conspiracy to monopolize the regional shopping center marketing in the Cape Girardeau, Missouri metropolitan area in contravention of § 2 of the Sherman Act, 15 U.S.C. § 2 in Count 4; and further in Count 6 a violation of the aforementioned statute in a creation of a monopoly in the operation of a regional shopping center in Cape Girardeau.
Having recognized above that there exists a total lack of evidence linking any acts committed by defendants to any of the statements by Lawley concerning the down-zoning of the Westborough Mall tract, and Staples' total lack of concern about such statements as well as the questionable effect or validity of such statements, plaintiffs' claim boils down to its illegal monopoly creation. This Court further reasons that this claim must fail since imposing liability on private parties in this instance would undermine their right to petition their legislature for favorable legislation. This right has been refined and secured by the Supreme Court in their adoption of Noerr-Pennington doctrine in Eastern Railroad Presidents Conference v. Noerr Motor Freight, Inc., 365 U.S. 127, 81 S.Ct. 523, 5 L.Ed.2d 464 (1961) and United Mineworkers of America v. Pennington, 381 U.S. 657, 85 S.Ct. 1585, 14 L.Ed.2d 626 (1965). This immunity protects even persons having anti-competitive intent in seeking to effectuate legislation favoring their own economic interests. Further, although the plaintiffs claim to have been subjected to prejudicial or unreasonable legislative acts, the facts indicate that the Board of Zoning Commissioners and the City Council merely voted to extend the same zoning opportunities to West Park Mall previously enjoyed by the Westborough Mall project. The decisions were based upon the substantiated view that the West Park group was simply better organized, financed, and could more readily deliver on its promise to build a regional shopping mall in Cape Girardeau if given an opportunity. Therefore, the acts of these defendants in seeking to obtain through the legislative process an equal opportunity to that which the Westborough developers had long enjoyed are not within the scope of the antitrust laws. Finally, in Parker v. Brown, 317 U.S. 341, 63 S.Ct. 307, 87 L.Ed. 315 (1943), the Supreme Court held that the Sherman Act does not bind the states and in no way restrains state acts such as the passage of the ordinances challenged herein. Even a pure monopoly  if a competition between one firm and another for the placement of a regional shopping mall in a specific area can be labeled the establishment *290 of the monopoly  is immunized if the monopoly is established under state law. Ladue Local Lines, Inc. v. Bi-State Development Agency, 433 F.2d 131 (8th Cir. 1970). See also California Retail Liquor Dealers Association v. MidCal Aluminum, Inc., 445 U.S. 97, 100 S.Ct. 937, 63 L.Ed.2d 233 (1980).
Pursuant to the guidelines established in the California Retail case, the state action immunity clearly extends to the zoning or rezoning powers of the municipalities in Missouri, See State of Missouri ex rel. Ellis v. Liddle, 520 S.W.2d 644 (Mo.App. 1975), § 89.020 et seq. RSMo 1978. This Court would question the validity of plaintiffs' argument that this case even concerns a "monopoly" under the antitrust laws. When it is axiomatic to all parties involved that only one enterprise can succeed in a certain area due to natural market conditions, costs of production, and total dollar demand, it can hardly be said that the success of one enterprise bestows upon the other a cause of action in antitrust. This limitation is brought to bear even more heavily in this case where the private defendants sought only the same competitive environment  that is the same zoning  as the plaintiffs had enjoyed for some five years.
The competition which took place between the plaintiffs and defendants occurred before an open legislative body which afforded both parties full rights to express themselves in public hearings and legitimately determined to give both parties equal access to the relevant shopping center market. See Hecht v. Pro-Football, Inc., 570 F.2d 982 (D.C.Cir.1977), cert. denied 436 U.S. 956, 98 S.Ct. 3069, 57 L.Ed.2d 1121 (1978). In sum, there exists no evidence of anti-competitive conduct by the defendants and therefore as a matter of law plaintiffs' monopoly claims must fail.
Plaintiffs Count 5 alleges a conspiracy to interfere with plaintiffs' valid business relationships and expectancies. Plaintiffs set out the persons with whom these relationships were enjoyed as only the (potential) tenants of Westborough Mall and "others". In outlining the elements of the tort of intentional interference in business relationships in Salomon v. Crown Life Ins. Co., 536 F.2d 1233 (8th Cir. 1976), the Eighth Circuit held that the defendants' behavior in the potential interference must be without justification. Cases interpreting this requirement including Salomon specify that actions taken in defendants' own economic interest  absent some wrongdoing  cannot constitute a tortious interference. This requirement clearly provides for the inevitable conflicts inherent in the free enterprise system. See Francis Chevrolet Co. v. General Motors Corp., 602 F.2d 227 (8th Cir. 1979). The efforts of the West Park group to build a shopping mall were justifiable as being legitimate business activity and not predatory or directly destructive of the Westborough plan. This Court further notes that its finding that the Westborough Mall project failed not due to the acts of defendants but rather due to the legitimate competitive successes of the West Park group and the inability of plaintiffs to execute its own business undertaking, Count 5 must also fail as a matter of law.
Plaintiffs' amended complaint Count 7 alleges that ordinances 1437 and 1469 are void for various reasons. The Missouri Court of Appeals in Schmitt v. City of Hazelwood, 487 S.W.2d 882 (Mo.App.1972) faced a similar question to the issue herein when it decided whether the operator of a car wash had standing to challenge a special use permit granted by the city to allow a competitor to also operate a car wash. The court reasoned that "they (zoning ordinances) promulgate a scheme of development and the municipality and preserve the character of the neighborhoods and the interest of the public in general.", Schmitt at 888, and upheld the dismissal of the plaintiff's complaint. The Cape Girardeau Zoning Commission determined that the effect of the zoning of West Park would not be detrimental to the public health, safety and morals or general welfare of the community, the scheme of development of the community, or threaten the preservation of the character of the surrounding neighborhood contrary to the public interest. As the *291 Court noted in Schmitt at 888 "comprehensive zoning ordinances are not intended to confer business monopolies on individuals". This is precisely what Westborough Mall seeks to effectuate by attack on ordinances 1437 and 1469, and since competitive disadvantage flowing from a zoning ordinance is not the particular interest which gives rise to standing on behalf of the disadvantaged firm to challenge that zoning, Count 7 must fail as a matter of law. See also Palmer v. St. Louis County, 591 S.W.2d 39 (Mo.App. 1979).
A review of the exhibits and documents defendants put forth which were reviewed by the City Planning and Zoning Commission when considering these two requests, fully indicates that in the course of the hearings held and the presentations made by all concerned parties, the zoning requests were reviewed in detail and thoroughly scrutinized. There exists no evidence that any city official acted with a disregard for the public welfare, in an arbitrary or capricious manner, or in any way advancing their own personal interests. It cannot be said that these legislative acts clearly were not even fairly debatable or that an abuse of discretion occurred beyond a reasonable doubt. See Tealin Company v. City of Ladue, 541 S.W.2d 544 (Mo. banc 1976) and Kellogg v. Joint Counsel of Women's Auxiliaries Welfare Assn., 265 S.W.2d 374 (Mo. 1954).
Plaintiffs object to the West Park zoning in that it contradicts a 1977 "comprehensive plan" for zoning for the City of Cape Girardeau, that there would exist an adverse impact on traffic and drainage in the surrounding area, that the passage of the ordinance would affect the value of certain property in the City, that the ordinance would constitute spot zoning, and that defendants were part of a larger illegal scheme or conspiracy. This Court notes that based upon the deposition testimony submitted to this Court it is certain that the "comprehensive plan" has never been adopted by the City and therefore is not binding upon it. Further, the plan is expressed in terms of goals and options for future development and is not in itself a zoning code which would bind the Council when faced with the West Park Mall zoning applications. There is no evidence that the traffic and drainage problems which would allegedly arise from the rezoning would have actually taken place. The decrease in the value of other land is not a proper or sufficient ground with which to overturn a rezoning decision of a city. Treme v. St. Louis County, 609 S.W.2d 706, 714 (Mo.App. 1980).
Equally frail is plaintiff's argument that these ordinances constitute spot zoning. The application of West Park Mall and the zoning of the surrounding areas indicate that the C-2 and C-4 zoning for the tract did not constitute "unique treatment contrary to like property in the same general location", Wheeler v. City of Berkeley, 485 S.W.2d 707, 711 (Mo.App.1972). By its very nature, all zoning will render a particular parcel distinctive from surrounding land in terms of its permissible use. But it can in no way be said that the C-2 and C-4 zoning for the West Park Mall project was out of line with surrounding lands. In fact, plaintiff's argument that this particular tract zoning constituted spot zoning would be equally applicable to its own site which enjoyed C-4 zoning since 1974 and was less than a mile away.
With regards to plaintiffs' allegation that the rezoning ordinances were part of a larger illegal scheme as alleged in previous counts is fatally defective in that after voluminous discovery being had, there exists no evidence of any such illegal scheme.
Lastly, plaintiffs' claims of a denial of due process or a deprivation of equal protection of the law are not valid grounds for enjoining the zoning ordinances since these claims legitimately arise only if these zoning ordinances do not bear a "substantial relation to the public help, safety, morals, or general welfare". Village of Euclid v. Ambler Realty Co., 272 U.S. 365, 387, 47 S.Ct. 114, 118, 71 L.Ed. 303 (1926). Since zoning is rationally related to a legitimate state interest and the two contested ordinances are not irrational either in their *292 distinction between the West Park site and other sites nor in its application to the Westborough Mall and West Park Mall projects, plaintiffs' equal protection and substantive due process claims must also fail as a matter of law. Massachusetts Board of Retirement v. Murgia, 427 U.S. 307, 96 S.Ct. 2562, 49 L.Ed.2d 520 (1976); Williamson v. Lee Optical Co., 348 U.S. 483, 75 S.Ct. 461, 99 L.Ed. 563 (1955).
For the above stated reasons, it is proper that summary judgment be entered on plaintiffs' seven count complaint.